Michael L. Baum, Esq., CA Bar No. 119511
mbaum@baumhedlundlaw.com
R. Brent Wisner, Esq., CA Bar No. 276023
rbwisner@baumhedlundlaw.com
Adam M. Foster, Esq., CA Bar No. 301507
afoser@baumhedlundlaw.com
Pedram Esfandiary, Esq., CA Bar No. 312569
pesfandiary@baumhedlundlaw.com
BAUM HEDLUND ARISTEI & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel:  (310) 207-3233 / Fax:  (310) 820-7444

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, a Delaware entity; MSPA CLAIMS 1, LLC, a Florida entity, | Case No.: 2:17-cv-2559-CAS-PLA |
| Plaintiffs, | **THIRD AMENDED CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| FARMERS INSURANCE EXCHANGE[1].; FARMERS INSURANCE COMPANY OF ARIZONA; FARMERS INSURANCE COMPANY OF COLUMBUS, INC.; FARMERS NEW CENTURY INSURANCE COMPANY; 21ST CENTURY INSURANCE COMPANY; SECURITY NATIONAL INSURANCE COMPANY; 21ST CENTURY CENTENNIAL INSURANCE COMPANY; COAST NATIONAL INSURANCE COMPANY; 21ST CENTURY INDEMNITY INSURANCE COMPANY; 21ST CENTURY NORTH AMERICA INSURANCE COMPANY; 21ST CENTURY PREFERRED INSURANCE COMPANY; FOREMOST SIGNATURE INSURANCE COMPANY; | |

---

[1] Plaintiffs previously named Farmers Group Inc. d/b/a Farmers Underwriter's ASS'N as a defendant.  However, upon representations by Defendants' counsel that Farmers Group Inc. does not write auto insurance policies, Plaintiffs have not included Farmers Group Inc. as a defendant in this Third Amended Complaint.

Defendants.

Plaintiffs MSP Recovery Claims, Series LLC, a Delaware entity, and MSPA Claims 1, LLC, a Florida entity (hereinafter collectively referred to as "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through the undersigned attorneys, bring this action against Farmers Insurance Exchange; Farmers Insurance Company of Arizona; Farmers Insurance Company of Columbus, Inc.; Farmers New Century Insurance Company; 21st Century Insurance Company; Security National Insurance Company, 21st Century Centennial Insurance Company; Farmers Insurance of Grand Rapids, Michigan, Coast National Insurance Company, 21st Century Indemnity Insurance Company, 21st Century North America Insurance Company, 21st Century Preferred Insurance Company, and Foremost Signature Insurance Company (hereinafter collectively referred to as "Defendants"), and state as follows:

## **INTRODUCTION**

1.      Defendants failed to fulfill their statutorily-mandated duty under the Medicare Secondary Payer provisions of the Medicare Act to reimburse Medicare Advantage Organizations ("MAOs/MA Plans") for medical treatments or expenses paid by Plaintiffs and the putative Class Members ("Class Members") on behalf of Medicare beneficiaries who entered into a settlement with Defendants.

2.      Plaintiffs assert the rights of MAOs/MA Plans via assignment of all rights, title, and interest allowing them to bring these claims.

3.      Plaintiffs and the putative class members provided Medicare benefits to Medicare-eligible beneficiaries enrolled under the Medicare Advantage program.  Each Medicare beneficiary suffered injuries related to an accident wherein Plaintiffs and the putative Class Members paid for the medical items and/or services.  However, Defendants were ultimately responsible for paying those expenses in accordance with 42 U.S.C. 1395y

and corresponding regulations ("MSP Law.")[2] Defendants' responsibility for such payments was demonstrated when Defendants entered into settlements with Medicare beneficiaries

4.     This lawsuit seeks reimbursement for those medical expenses paid for by the Plaintiffs and the putative Class Members that should have been paid, in the first instance, by Defendants under the Medicare Act.

5.     As such, Plaintiffs filed this action on behalf of themselves and all other similarly situated MAOs/MA Plans for double damages, pursuant to the Medicare Secondary Payer private cause of action, 42 U.S.C. § 1395y(b)(3)(A).

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d).  At least one member of the class is a citizen of a different state than the Defendants and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

7.     This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 since the claims alleged herein arise under the laws of the United States.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for any non-federal claims alleged herein.

8.     This Court has personal jurisdiction over the Defendants insofar as the Defendants are authorized and licensed to conduct business in California, maintain and carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avails itself of the benefits in this judicial district.

9.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391.

---

[2] Each Defendants is a "primary plan" in accordance with the MSP Law. 42 U.S.C. § 1395y(b)(2)(A) (the term "primary plan" means "a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies.")

**THIRD AMENDED COMPLAINT**

# BACKGROUND

## I.        The Medicare Act

10.     In 1965, Congress enacted the Medicare Act with the purpose of establishing a federally-funded health insurance program for the elderly and disabled.

11.     The Medicare Act consists of five parts:  Part A, Part B, Part C, Part D, and Part E.  Parts A and B create, describe, and regulate traditional fee-for-service, government-administered Medicare.  *See* 42 U.S.C. §§ 1395c to 1395i–5; §§ 1395–j to 1395–w.  Under Parts A and B, Medicare provides hospital insurance and coverage for medically necessary outpatient and physician services.  42 U.S.C. § 1395w-21(a)(1)(A).  These benefits are administered on a per-fee basis, meaning Medicare pays for a beneficiary's medical needs as they arise.  The United States Centers of Medicare & Medicaid Services ("CMS") provides coverage under Parts A & B.  Part C outlines the Medicare Advantage program—described in further detail below—wherein Medicare beneficiaries may elect to use private insurers, *i.e.*, MAOs/MA Plans, paid for by the United States, to provide Medicare benefits.  42 U.S.C. §§ 1395w–21–29.  Part D provides for prescription drug coverage for Medicare beneficiaries, and Part E contains various miscellaneous provisions.

## II.        Medicare Secondary Payer Laws

12.     At the time of its inception, Medicare was the primary payer of medical costs.  When a Medicare beneficiary was injured, the medical bill was submitted directly to Medicare, even if there was overlapping insurance coverage for that patient.  However, in an effort to reduce escalating costs, Congress altered the Medicare payment scheme in 1980 by adding the Medicare Secondary Payer ("MSP") provisions to the Medicare Act.

13.     Under the MSP provisions, codified at 42 U.S.C. § 1395y, Medicare is the "secondary payer" to all other sources of coverage.  If there is overlapping insurance coverage for a particular beneficiary, that overlapping coverage is primary, *i.e.*, it pays the medical expense first—Medicare is always secondary.

14.     A primary plan's responsibility to reimburse for such payment "may be

4

**THIRD AMENDED COMPLAINT**

demonstrated by . . . a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii). See also 42 C.F.R. § 411.22(b).

15.     In the event a primary plan fails to properly reimburse Medicare for conditional payments made as a secondary payer, the MSP provisions allow for "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) [.]" 42 U.S.C. § 1395y(b)(3)(A).

16.     Defendants are defined as "primary payers" and their policies are considered "primary plans" under the MSP provisions.  See 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan … a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance….); 42 C.F.R. § 411.21 (same).

17.      Here, Defendants' insureds ("Tortfeasors") committed tortious acts which injured Medicare beneficiaries. Plaintiffs, and other similarly situated MAOs/MA Plans, paid for medical items and/or services related to those injuries. When Tortfeasor(s) and Medicare beneficiaries entered into settlements to resolve claims made against Tortfeasor(s), Defendants indemnified its insured(s) by making settlement payments. Such settlements triggered Defendants' obligations to make primary payment for the medical items and/or services furnished to the Medicare beneficiary.

### III.    Medicare Part C Program

18.     In 1997, Congress amended the Medicare Act and added Part C. "The congressional goal in creating the Medicare Part C option was to harness the power of private sector competition to stimulate experimentation and innovation to create a more efficient and less expensive Medicare system." D. Gary Reed, Medicare Advantage Misconceptions Abound, 27 Health Law 1, 3 (2014).  Part C gives Medicare

**THIRD AMENDED COMPLAINT**

beneficiaries the option of receiving Medicare benefits through private insurers (*i.e.*, MAOs/MA Plans).[3]

19.     MAOs/MA Plans enter into a contract, directly or indirectly, with CMS to administer and provide the same benefits received under traditional Medicare.  42 U.S.C. §§ 1395w-21, 1395w-23.  Pursuant to this contract, MAOs/MA Plans receive a fixed payment from CMS for each enrollee.  MAOs/MA Plans do not issue a Medicare "insurance policy" but, rather, send out a document describing the Medicare benefits that enrollees receive. They do not pay benefits pursuant to a 'policy', but rather under a statutory framework.  Thus, MAOs/MA Plans pay healthcare providers directly for the care received by Part C enrollees.  If the costs of this care exceed the fixed payment received from the government, the MAO/MA Plan assumes the risk and cost.  However, if that care costs less than the fixed payment, the MAO/MA Plan keeps the difference as profit.  Thus, MAOs/MA Plans are incentivized to provide health insurance more efficiently and focus on positive health outcomes in a way that traditional fee-for-service Medicare models are not. *See* H.R.Rep. No. 105–149, at 1251 (1997) (Part C allows "the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options.").

20.     To become a MAO/MA Plan that contracts directly with the government a private insurer must enter a bidding process, meeting certain requirements set by CMS. Additionally, in providing the basic benefits offered to traditional Medicare enrollees, MAOs/MA Plans must abide by national coverage determinations provided by CMS and all coverage disputes between enrollees and MAOs/MA Plans must go through the traditional Medicare appeals process.  CMS sets the fixed rate at which MAOs/MA Plans will be remunerated per enrollee and establishes services the MAO must provide.

21.     An enrollee's health coverage with an MAO is strictly construed and regulated by CMS.  For instance, CMS creates templates that MAOs/MA Plans must utilize when

---

[3] Originally, these plans were considered "Medicare+Choice" plans, but the Medicare Modernization Act (MMA) of 2003 renamed this service "Medicare Advantage" plans.

**THIRD AMENDED COMPLAINT**

creating documents, including among others, the evidence of coverage ("EOC"), a document that describes in detail the health care benefits covered by the health plan. CMS requires that every evidence of coverage contain the following language:

> [w]e have the right and responsibility to collect for covered Medicare services for which Medicare is not the primary payer. According to CMS regulations at 42 CFR §§ 422.108 and 423.462, [insert 2017 plan name], as a Medicare Advantage Organization, will exercise the same rights of recovery that the Secretary exercises under CMS regulations in subparts B through D of part 411 of 42 CFR and the rules established in this section supersede any State laws.

22.   The amount paid to the MAO/MA Plan is carefully calibrated, considering, such factors as the geographic location, age, disability status, gender, institutional status, and health status of *each* Medicare Advantage enrollee, to ensure actuarial equivalence with the traditional Medicare fee-for-service program option.  *See* 42 U.S.C. § 1395w-23(c).

23.   Currently, there are over 16 million individuals enrolled in Medicare Advantage plans nationwide. More than 37 million individuals are enrolled in Medicare prescription drug plans ("PDPs"), either on a stand-alone basis or in connection with a Medicare Advantage plan.

24.   The size and expense of the Medicare Advantage program makes it important that insurance companies, like Defendants, do not deflect their financial obligations under the MSP law onto MAOs/MA Plans and ultimately onto the Medicare Trust Funds.[4]

25.    Beneficiaries who receive their benefits through the traditional Medicare scheme and those who elect to receive their benefits through an MAO plan are all considered Medicare beneficiaries.  Moreover, the MSP provisions apply with equal force to MAOs/MA Plans.  Indeed, MAOs/MA Plans are specifically allowed to "exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations[.]" 42 C.F.R. § 422.108(f).

---

[4] Medicare is funded through two trust fund accounts held by the U.S. Treasury. https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/ReportsTrustFunds/Downloads/TR2016.pdf (last visited Feb. 19, 2017).

**THIRD AMENDED COMPLAINT**

26. The legislative history of the MSP provisions demonstrates that MAOs/MA Plans were intended to occupy a status analogous to that of traditional Medicare:

> [u]nder original fee-for-service, the Federal government alone set the legislative requirements regarding reimbursement, covered providers, covered benefits and services, and mechanisms for resolving coverage disputes. Therefore, the Conferees intend that this legislation provide a clear statement extending the same treatment to private [MA] plans providing Medicare benefits to Medicare beneficiaries.

H.R.Rep. No. 105–217, at 638 (1997).

27. Part C of the Medicare Act also contains the following important provisions:

> Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
>
> > (A)   the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
> >
> > (B)   such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w–22(a)(4).

28. Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which … are not *reasonable* and *necessary* for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A) (emphasis added).

29. Because this Section contains an express condition of payment – that is, "no payment may be made" – it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

**THIRD AMENDED COMPLAINT**

30.     Once an MAO makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary. 42 C.F.R. §422.566(b).

31.     If a Medicare beneficiary or primary payer contests an MAO/MA Plan's right to reimbursement, the claim is construed as "arising under" the Medicare Act.  Therefore, the time limitations for contesting whether a claim is reasonable or necessary under the Medicare Act applies.

32.     In this case, Defendants failed to administratively appeal the MAOs/MA Plans' rights to reimbursement within the administrative remedies period on a class-wide basis. Defendants, therefore, are time-barred from challenging the propriety of reimbursements or the amounts paid.

33.     Furthermore, the MSP provisions create a private cause of action against a primary plan when the primary payer fails to pay first or does not reimburse an MAO for its payment: "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with [the requirements of the MSP Act]." § 1395y(b)(3)(A).  The provisions do not place any limitations on which private parties may bring suit.

34.     The different types of reimbursement methods between health care providers, health plans and CMS contracts are crucial to understanding how the MSP laws affect the health care system as a whole. "The most common reimbursement methods under a managed care contract are fee-for-service, capitation, and risk pools."[5] CMS contracts with MAOs/MA Plans under a capitation system, while those MAOs/MA Plans contract with Maintenance Service Organizations ("MSOs") and Independent Practice Associations ("IPAs") using both the capitation system and the risk pool method.

IV.     **Primary Payer Reporting Requirements**

35.    In 2007, the Medicare Act was once again amended by the Medicare, Medicaid and SCHIP Extension Act of 2007 ("MMSEA"), which aimed to improve the ability of CMS and MAOs/MA Plans to administer Medicare benefits.  Part of those changes specifically aimed to help CMS and MAOs/MA Plans identify when a Medicare beneficiary was covered by a primary insurance payer.

36.    The 2007 amendments, therefore, created an affirmative duty on primary payers, such as Defendants, to notify Medicare and MAOs/MA Plans when they should pay for medical expenses or be primary payers.  Specifically, Responsible Reporting Entities ("RREs"), which include insurers like the Defendants, must determine whether their insureds are Medicare beneficiaries when they enter into settlement agreements with them.  *See* 42 U.S.C. §§ 1395y(b)(7) and (8) (RREs shall "determine whether a claimant…is entitled to benefits under" Medicare); *see also* Section 111 NGHP User Guide, Version 5.0, Chapter 3 at *3-1.[6]

37.    The new reporting requirements affect all parties involved in a payment of a settlement, judgment, or award with a Medicare beneficiary after January 1, 2010. When reporting a case under MMSEA, an RRE must report the Medicare beneficiary's full name, Medicare Health Insurance Claim Number ("HICN"), gender and date of birth, and complete address and phone number.[7]  *See* Section 111 NGHP User Guide, Version 5.0, Chapter 3 at *3.

38.    Then, when CMS or an MAO/MA Plan receives a medical claim for payment for that identified Medicare beneficiary/insured, the claim can be cross-checked against the notification database to determine whether there is a primary payer responsible for the medical claim. Anticipating the burden of the new reporting requirements, CMS

---

[5] David M. Humiston, Managed Care Litigation, in THE AMERICAN BAR ASSOCIATION, HEALTH LAW SECTION 19 (2d ed. 2013).

[6] *See* 42 C.F.R. § 411.25.

[7] An RRE is also required to notify CMS and MAOs/MA Plans/MA Plans when the RRE has made the determination to assume responsibility for ongoing medical services or items for one of their insureds that is also a Medicare beneficiary.

**THIRD AMENDED COMPLAINT**

developed a "query process" whereby an RRE can determine a claimant's Medicare status electronically and without authorization. RREs can electronically query whether a particular claimant is a Medicare beneficiary and, if so, make sure to notify Medicare when they enter into a settlement with that Medicare beneficiary.

39.    An insurance company's failure to comply with these reporting requirements results in a civil money penalty of up to $1,000.00 for each day of noncompliance with respect to each claimant.  42 U.S.C. § 1395y(b)(8)(E)(i).

40.    However, compliance with these reporting requirements does not absolve the primary payer of its obligation to pay first.  The reporting requirements are separate and apart from a primary payer's obligation to pay first under the MSP provisions. Reporting does not, itself, provide a safe harbor from making primary payments.  It only avoids the imposition of civil penalties.  If a primary payer was responsible to pay first, it must pay first regardless of conduct, intent, or even the primary payer's knowledge of a potential secondary payer.  The obligation of a primary payer to pay first or reimburse CMS or MAOs/MA Plans is only discharged by making the payment.

## PARTIES

41.    MSP Recovery Claims, Series LLC is a Delaware entity with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. MSP Recovery Claims, Series LLC is a citizen of the State of Florida and is not a citizen of the state of any of the Defendant.  Numerous MAOs/MA Plans have assigned their recovery rights to assert the causes of action alleged in this Complaint to designated series LLCs of the Plaintiff, and Plaintiff maintains the legal right, by and through its limited liability company agreement, to sue on behalf of each of its designated series LLCs. As such, Plaintiff has the right and authority to seek reimbursement of Medicare payments made by the MAOs/MA Plans that should have been paid, in the first instance, by Defendant.

42.    Plaintiff MSPA Claims 1, LLC is a Florida entity, with its principal place of

**THIRD AMENDED COMPLAINT**

business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155.  MSPA Claims 1, LLC is a citizen of the State of Florida and is not a citizen of the state of the Defendants.  Numerous MAOs/MA Plans have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff.  As part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs/MA Plans that should have been paid, in the first instance, by the Defendants.

43.	Plaintiffs have been assigned all legal rights of recovery and reimbursement for health care services and Medicare benefits provided by health care organizations that administer Medicare benefits for enrollees under Medicare; whether said rights arise from (i) contractual agreements, such as participation and network agreements with capitation and risk sharing arrangements, and/or (ii) state and federal laws that provide for the reimbursement of conditional payments made by the assignor health plans, including the right to recover claims for health care services billed on a fee-for-service basis.

44.	Defendant Farmers Insurance Exchange is a California company with its principal place of business located at 4680 Wilshire Blvd., Los Angeles, CA 90010

45.	Defendant Farmers Insurance Company of Arizona is an Arizona company with its principal place of business located at 2338 W Royal Palm Rd Site-J, Phoenix, Arizona 85021.

46.	Defendant Farmers Insurance Company of Columbus, Inc. is an Ohio company with its principal place of business located at 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

47.	Defendant Farmers New Century Insurance Company is an Illinois company with its principal place of business located at 2245 Sequoia Drive, Aurora, Illinois 60506.

48.	Defendant 21st Century Insurance Company is a California company with its prinicpal place of business located at 3 Beaver Valley Rd., Wilmington, Delaware 19803.

**THIRD AMENDED COMPLAINT**

49.   Security National Insurance Co. is a Delware company with its principal place of business located at 5701 Stirling Road, Davie, Florida 33314.

50.   21st Century Centennial Insurance Co is a Pennsylvania company with its principal place of business located at 3 Beaver Valley Rd., Wilmington, Delaware 19803.

51.   Mid-Century Insurance Company is a California company with its principal place of business located at 6301 Owensmouth Ave., Woodland Hills, California 91367.

52.   21st Century North America Insurance Co is a New York company with its principal place of business located at 3 Beaver Valley Road, Wilmington Delaware 19803.

53.   21st Century Indemnity Insurance Company is a Pennsylvania company with its principal place of business located at 3 Beaver Valley Road, Wilmington, Delaware 19803.

54.   21st Century Preferred Insurance Company is a Pennsylvania company with its principal place of business located at 3 Beaver Valley Road, Wilmington, Delaware 19803.

55.   Foremost Signature Insurance Company is a Michigan company with its principal place of business located at 5600 Beech Tree Lane, Caledonia, Michigan 49316.

56.   Coast National Insurance Company is a California company with its principal place of business located at 900 S. Pine Island Road, Suite 600, Plantation, FL 33324.

57.   Farmers Insurance Company Grand Rapids Michigan is an unknown entity with an unknown principal place of business. It is included in this complaint as it was listed as a traceable Defendant entity in jurisdictional discovery.

58.   Complete diversity exists between Plaintiffs and Defendants.

## MAO / MA Plans

59.   The following entities are MAO/MA Plans that have directly contracted with CMS to provide Medicare Part C benefits: Connecticare, Inc., Health Insurance Plan of

**THIRD AMENDED COMPLAINT**

Greater New York, Group Health, Inc., Florida Health Care Plus, Network Health Home Insurance, Inc., Preferred Medical Plan, Inc., SummaCare, and Fallon Community Health Plan.[8]

60.     On information and belief, the following entities are MAOs/MA Plans that: (1) are established or organized, and operated, by a health care provider, or group of affiliated health care providers; (2) provide a substantial proportion of the health care items and services under a Medicare Part C contract directly through the provider or affiliated group of providers; and (3) share, directly or indirectly, substantial financial risk with respect to the provision of such items and services and have at least a majority financial interest in the entity: Alianza Profesional de Cuidado Medico, Inc., Arse, Inc., Asomante Medical Group, Inc., Broward Primary Partners, LLC, Centro Medico de Salinas, Inc., Corporacion Puertorriquena de Salud, Inc., Family Medicine Group, Inc., First Medical Center, Inc., Grupo de Cuidado Medico Integral, Inc., Grupo Medico Aliado Del Noreste, Inc., Grupo Medico del Noreste, Inc., Grupo Medico del Yunque, Inc., Healthcare Advisors Services, Inc., Healthcare Alliance Group, Inc., Hygea Health Holdings, Inc., Intervalley Health Plan, Inc., Medico-Caribe CSP, Inc., Medical IPA of the Palm Beaches, Inc., Miami Institute for Joint Reconstruction, OrthoNow, LLC, Physician Access Urgent Care Group, LLC, PDP Health Management, Inc., Physicians HMO (IPA 951), Plum Healthcare Group, LLC, Policlinicas Medicas Asociadas, Inc., Ponce Advance Medical Group, Inc., Preferred Primary Care, LLC, Primary Physicians Medical Services, LLC, Healthy Partners / Risk Watchers, Inc., Southern Healthcare Group, Inc., Suncoast Provider Network, Inc., Transatlantic Healthcare, Trinity

---

[8] At the time of this writing Connecticare, Inc., Health Insurance Plan of Greater New York, Group Health, Inc., Network Health Home Insurance, Inc., SummaCare, and Fallon Community Health Plan were all listed on the monthly MA Contract Directory as entities that contract directly with CMS. Upon information and belief, Florida Health Care Plus and Preferred Medical Plan, Inc. were: a) both HMOs; b) listed on the same list by CMS. Their recovery rights have been assigned to Plaintiffs.

**THIRD AMENDED COMPLAINT**

Physicians, LLC, University Health Care MSO, Inc., Verimed IPA, LLC, Choice One Medical Group, LLC, Professional Health Choice, and MCCI Group Holdings, LLC. The above entities are also considered to be coordinated care plans, which includes a network of providers that are under contract or arrangement to deliver the benefit package approved by CMS under Medicare Part C. Texas Physicians and Reliance ACO, LLC are not MA Plans in the sense that ACOs deal with traditional Medicare and do not contract with CMS in the same sense as MAOs/MA Plans, i.e. via Medicare Advantage. They do have standing under the MSP laws as discussed, *infra*.

## STANDING

61.    Plaintiffs have standing to bring these causes of action because certain MAOs/MA Plans, whether HMOs, MSOs, ACOs, IPAs, et al[9], (collectively, the "assignors"), assigned their rights of reimbursement, recovery and subrogation to Plaintiffs.  Plaintiffs own all of the assignors' claims for reimbursement and recovery, as well as their subrogation rights, including the right to pursue recovery of medical claims or payments, amounts owed on unpaid bills, and expenses paid by the assignors on behalf of their beneficiaries from entities liable as primary payers (or entities that received payment from primary payers).

62.    All of these assignments are valid and binding contracts.

63.    The underlying assignments, alleged in some detail below, allow assigned all legal rights of recovery and reimbursement for health care services and Medicare benefits

---

[9] A Management Service Organization ("MSO") is an organization owned by a group of physicians, a physician hospital joint venture, or investors in conjunction with physicians. MSOs generally provide practice management and administrative support services to individual physicians and group practices.  An independent practice association ("IPA") is an association of independent physicians, or other organization that contracts with independent physicians, and provides services to managed care organizations on a negotiated per capita rate, flat retainer fee, or negotiated fee-for-service basis. An Accountable Care Organization ("ACO") is groups of doctors, hospitals, and other health care providers, who come together voluntarily to give coordinated high-quality care to their Medicare patients.

**THIRD AMENDED COMPLAINT**

provided by health care organizations that administer Medicare benefits for beneficiaries under the MSP laws; whether said rights arise from (i) contractual agreements, such as participation and network agreements with capitation and risk sharing arrangements, and/or (ii) state and federal laws that provide for the reimbursement of conditional payments made by the assignor health plans, including the right to recover claims for health care services billed on a fee-for-service basis.

64.    The MSP statute provides for "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3). This private right of action does not restrict who may bring it, and courts routinely hold that non-government and non-MAO parties may bring it. *See, e.g., Bio-Med. Applications of Tennessee, Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 279, 284-87 (6th Cir. 2011) (allowing a patient and medical provider, not an MAO, to bring MSP private right of action against primary plan using the private right of action); *O'Connor v. Mayor & City Council of Baltimore*, 494 F. Supp. 2d 372, 374 (D. Md. 2007) (allowing MSP private cause of action by Medicare beneficiary). This includes not just, for example HMOs, that contract directly with CMS, but other "first tier" or "downstream entities" such as MSOs and IPAs.

65.    The regulations make it clear that "[t]he MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations[.]" 42 C.F.R. § 422.108(f). And, MA organization[10] is defined by statute.  42 U.S.C. § 1395w-21(a). Specifically, an MA organization "may be … plans offered by provider-sponsored organizations (as defined in section 1395w-25(d) of this title)[.]" *Id.* § 1395w-21(a)(2)(A)(i). And, a "'provider-sponsored organization'

_____

[10] The original name of a MAO was called a "Medicare+Choice" organization. See 42 U.S.C. § 1395w-21(a). However, in 2003, Congress renamed "Medicare+Choice" to "Medicare Advantage" and "MA" as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003. PL 108–173, December 8, 2003, 117 Stat

**THIRD AMENDED COMPLAINT**

means a public or private entity-- (A) that is established or organized, and operated, by a health care provider, or group of affiliated health care providers, (B) that provides a substantial proportion … of the health care items and services under the contract under this part directly through the provider or affiliated group of providers, and (C) with respect to which the affiliated providers share, directly or indirectly, substantial financial risk with respect to the provision of such items and services and have at least a majority financial interest in the entity." 42 U.S.C.A. § 1395w-25(d)(1)(A–C). In other words, an MA organization (or MAO/MA Plan as used in the briefing) is any established provider or group of affiliated providers that provide Medicare Part C benefits and take on the risks associated with providing that care.

66.    This definition of an MA plan is similarly incorporated in the regulations, which state that "[a]n MA plan may be a coordinated care plan" and that "[a] coordinated care plan is a plan that includes a network of providers that are under contract or arrangement with the organization to deliver the benefit package approved by CMS." 42 C.F.R. § 422.4(a)(1).[11] MA Plans, by definition, include the network of providers under contract to deliver Medicare Part C benefits. The statute considers them MA plans regardless of whether they are "downstream" or "first tier" entities such as MSOs and IPAs.

67.    ACOs have standing as providers of healthcare in connection with traditional Medicare under the MSP laws.  These entities work directly with Medicare.  *See* https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/ACO/.  As per CMS, ACOs "give coordinated high-quality care to their Medicare patients." Accordingly, if an ACO incurs a medical expense that should have been covered by a

---

2066 ("[A]ny reference to 'Medicare+Choice' is deemed a reference to 'Medicare Advantage' and 'MA'").

[11] And "arrangement" is defined as "a written agreement between an MA organization and a provider or provider network, under which— (1) The provider or provider network agrees to furnish for a specific MA plan(s) specified services to the organization's MA enrollees; (2) The organization retains responsibilities for the services; and (3) Medicare payment to the organization discharges the enrollee's obligation to pay for the services." 42 C.F.R. § 422.2.

**THIRD AMENDED COMPLAINT**

primary payor it is entitled to reimbursement under the MSP laws.[12]

## ASSIGNMENTS

68.     On 8/28/2015, Healthcare Advisors Services, Inc. entered into an agreement with MSP Recovery, LLC, irrevocably assigning its right to recover conditional payments under the MSP law.  The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  The assignment was entered into under Florida law.  By the terms of the contract, the parties are required to maintain confidentiality relating to the existence of the assignment contract.  On 6/12/2017, MSP Recovery, LLC entered into an agreement with MSP Recovery Claims, Series LLC, irrevocably assigning its right to recover conditional payments under the MSP law as assigned from Healthcare Advisors Services, Inc.  This assignment was made pursuant to the Series 15-08-27 agreement. This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  This second assignment was entered into under Delaware law. Consideration was given between each party in executing these assignments.

69.     On 12/13/2016, Plum Healthcare Group, LLC entered into an agreement with MSP Recovery, LLC, irrevocably assigning its right to recover conditional payments under the MSP law.  The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  The assignment was entered into under Florida law.  By the terms of the contract, the parties are required to maintain confidentiality relating to the existence of the assignment contract.  On 6/12/2017, MSP Recovery, LLC entered into an agreement with MSP Recovery Claims, Series LLC, irrevocably assigning its right to recover conditional payments under the

---

[12] Unless, specifically discussing Medicare Advantage laws as opposed to MSP laws, generally, for brevity, the Complaint will simply refer to MAOs/MA Plans instead of the unwieldly "and ACOs and other related entities." Except for when dealing expressly with Medicare Advantage laws, specifically, the reader can assume that ACOs and other entities under the MSP laws are meant to be included when referencing MAOs/MA Plans in the Complaint, generally.

**THIRD AMENDED COMPLAINT**

MSP law as assigned from Plum Healthcare Group, LLC.  This assignment was made pursuant to the Series 16-10-504 agreement. This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  This second assignment was entered into under Delaware law. Consideration was given between each party in executing these assignments.

70.    On 5/12/2017, SummaCare, Inc. entered into an agreement with MSP Recovery, LLC, irrevocably assigning its right to recover conditional payments under the MSP law. The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  The assignment was entered into under Ohio law.  By the terms of the contract, the parties are required to maintain confidentiality relating to the existence of the assignment contract.  On 6/12/2017, MSP Recovery, LLC entered into an agreement with MSP Recovery Claims, Series LLC, irrevocably assigning its right to recover conditional payments under the MSP law as assigned from SummaCare, Inc.  This assignment was made pursuant to the Series 16-11-509 agreement.  This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  This second assignment was entered into under Delaware law.  Consideration was given between each party in executing these assignments.

71.    On 4/7/2016, Verimed IPA, LLC entered into an agreement with MSP Recovery, LLC, irrevocably assigning its right to recover conditional payments under the MSP law. The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  The assignment was entered into under Florida law.  By the terms of the contract, the parties are required to maintain confidentiality relating to the existence of the assignment contract.  On 6/12/2017, MSP Recovery, LLC entered into an agreement with MSP Recovery Claims, Series LLC, irrevocably assigning its right to recover conditional payments under the MSP law as assigned from Verimed IPA, LLC.  This assignment was made pursuant to the Series 15-09-108 agreement.  This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  This

**THIRD AMENDED COMPLAINT**

second assignment was entered into under Delaware law. Consideration was given between each party in executing these assignments.

72.     On 12/3/2014, MCCI Group Holdings, LLC (MCCI) entered into an agreement with MSP Recovery, LLC, irrevocably assigning its right to recover conditional payments under the MSP law.  The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  The assignment was entered into under Florida law.  By the terms of the contract, the parties are required to maintain confidentiality relating to the existence of the assignment contract.  On 2/20/2015, MSP Recovery, LLC entered into an agreement with MSPA Claims 1, LLC, irrevocably assigning its right to recover conditional payments under the MSP law as assigned from MCCI Group Holdings, LLC.  This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  This second assignment was entered into under Florida law.  Consideration was given between each party in executing these assignments.

73.     On 4/27/2017, Reliance ACO, LLC entered into an agreement with MSP Recovery Claims, Series LLC, irrevocably assigning its right to recover conditional payments under the MSP law.  The assignment contract was executed by individuals of majority, and with legal authority to bind the respective parties.  The assignment was entered into under Florida law.  Consideration was given between each party in executing these assignments. On June 12, 2017, within MSP Recovery Claims Series, LLC, pursuant to the 17-02-564 agreement, further assigned, its rights to receive conditional payments as assigned from Reliance ACO, LLC.  This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  This second assignment was entered into under Delaware law. Consideration was given between each party in executing these assignments.

74.     On 4/15/2014, Florida Health Care Plus, Inc. entered into an agreement with La

**THIRD AMENDED COMPLAINT**

Ley Recovery Systems, Inc., irrevocably assigning its right to recover conditional payments under the MSP law.[13] The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. The assignment was entered into under Florida law. Consideration was given between each party in executing these assignments. On 2/20/2015 Lay Ley Recovery Systems, Inc. entered into an agreement with MSPA Claims 1, LLC irrevocably assigning its right to recover conditional payments under the MSP law as assigned from Florida Health Care Plus, Inc. This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. This second assignment was entered into under Florida law. Consideration was given between each party in executing these assignments. On 6/1/2016 a Settlement Agreement was entered into by La Ley Recovery Systems, Inc., MSP Recovery, LLC, MSPA Claims 1, LLC, and the Florida Department of Financial Services as the Receiver of Florida Healthcare Plus, Inc. on behalf of Florida Healthcare Plus, Inc. Such agreement confirmed the ownership of all of Florida Healthcare Plus, Inc.'s claims relating to conditional payments under the MSP law to MSPA Claims 1, LLC, ultimately. This Settlement Agreement was approved by the Leon County Court of Florida on 6/14/2016.

75.    On 03/20/2018, EmblemHealth Services Company, LLC entered into an agreement with MSP Recovery Claims, Series LLC, pursuant to Series 16-08-483, irrevocably assigning its right to recover conditional payments under the MSP law. The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. The assignment was entered into under New York law. Consideration was given between each party in executing these assignments.

---

[13] Section 1.1 of the FHCP-La Ley Recovery Assignment Agreement between FHCP and La Ley Recovery provides as follows: [b]y way of this agreement, [FHCP] appoints, directs, and otherwise assigns all of [FHCP's] rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any its members and/or plan participants.

**THIRD AMENDED COMPLAINT**

76.     On 03/20/2018, Health Insurance Plan of Greater New York entered into an agreement with MSP Recovery Claims, Series LLC, pursuant to Series 16-08-483, irrevocably assigning its right to recover conditional payments under the MSP law.  The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  The assignment was entered into under New York law.  Consideration was given between each party in executing these assignments.

77.     On 03/20/2018, Group Health Inc., entered into an agreement with MSP Recovery Claims, Series LLC, pursuant to Series 16-08-483, irrevocably assigning its right to recover conditional payments under the MSP law.  The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  The assignment was entered into under New York law. Consideration was given between each party in executing these assignments.

78.     On 03/20/2018, Connecticare, Inc. entered into an agreement with MSP Recovery Claims, Series LLC, pursuant to Series 15-09-157, irrevocably assigning its right to recover conditional payments under the MSP law.  The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  The assignment was entered into under Connecticut law. Consideration was given between each party in executing these assignments. Emblem Health Services, LLC, Health Insurance Plan of Greater New York, Group Health, Inc., and Connecticare, Inc. are collectively referred to in this Complaint as "Emblem."

## TRACING[14]

---

[14] As per this Court's Order regarding the Second Amended Complaints, the Court ordered the parties to engage in jurisdictional discovery regarding tracing in order to ascertain the proper parties in this case.  The parties did so.  These Defendant entities are the Defendant entities under the Farmers umbrella which Defendants confirmed to Plaintiffs during jurisdictional discovery. The exception is the beneficiary in connection to Farmers New Century Insurance Company.  Currently, there are still some ninety-four beneficiaries which Defendants have not responded to Plaintiffs about.  Accordingly,

**THIRD AMENDED COMPLAINT**

79.     A New York resident named Ms. E.R.C. was injured in an accident by an individual insured under Farmers New Century Insurance Company's insurance policy. Ms. E.R.C.'s medical expenses were subsequently paid by Emblem whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs.  Following the accident, Farmers New Century Insurance Company indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Ms. E.R.C. However, Farmers New Century Insurance Company did not pay or reimburse Emblem for Ms. E.R.C.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, Farmers New Century Insurance Company did not challenge Emblem's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, Farmers New Century Insurance Company is liable for double damages.

80.     A Florida resident named Ms. J.D.D. was injured in an accident by an individual insured under Security National Insurance Company's insurance policy. Ms. J.D.D.'s medical expenses were subsequently paid by Florida Health Care Plus whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs.  Following the accident, Security National Insurance Company indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Ms. J.D.D. However, Security National Insurance Company did not pay or reimburse Florida Health Care Plus for Ms. J.D.D.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, Security National Insurance Company did not challenge Florida Health Care Plus's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, Security National Insurance Company is liable for double damages.

---

Plaintiffs reserve the right to add/drop parties. Plaintiffs traced this beneficiary to that defendant using databases, but Defendants have yet to confirm this beneficiary.

**THIRD AMENDED COMPLAINT**

81.    A Florida resident named Ms. L.L. was injured in an accident by an individual insured under 21st Century Centennial Insurance Company's insurance policy. Ms. L.L.'s medical expenses were subsequently paid by Florida Health Care Plus whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Following the accident, 21st Century Centennial Insurance Company indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Ms. L.L. However, 21st Century Centennial Insurance Company did not pay or reimburse Florida Health Care Plus for Ms. L.L.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, 21st Century Centennial Insurance Company did not challenge Florida Health Care Plus's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, 21st Century Centennial Insurance Company is liable for double damages.

82.    A Florida resident named Mr. M.C. was injured in an accident by an individual insured under 21st Century Centennial Insurance Company's insurance policy. Mr. M.C.'s medical expenses were subsequently paid by Health Care Advisor Services, Inc. whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs.  Following the accident, 21st Century Centennial Insurance Company indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Mr. M.C. However, 21st Century Centennial Insurance Company did not pay or reimburse Health Care Advisor Services, Inc. for Mr. M.C.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, 21st Century Centennial Insurance Company did not challenge Health Care Advisor Services, Inc.'s payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, 21st

Plaintiffs reserve the right to amend as to this named defendant and beneficiary should Defendants supplement their response.

24

**THIRD AMENDED COMPLAINT**

Century Centennial Insurance Company is liable for double damages.

83.     A Florida resident named Mr. H.H. was injured in an accident by an individual insured under 21st Century Indemnity Insurance Company's insurance policy. Mr. H.H.'s medical expenses were subsequently paid by MCCI whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs.  Following the accident, 21st Century Indemnity Insurance Company indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Mr. H.H. However, 21st Century Indemnity Insurance Company did not pay or reimburse MCCI for Mr. H.H.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, 21st Century Indemnity Insurance Company did not challenge MCCI's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, 21st Century Indemnity Insurance Company is liable for double damages.

84.     A Florida resident named Ms. A.O. was injured in an accident by an individual insured under 21st Century North America Insurance Company's insurance policy. Ms. A.O.'s medical expenses were subsequently paid by MCCI whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs.  Following the accident, 21st Century North America Insurance Company indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Ms. A.O. However, 21st Century North America Insurance Company did not pay or reimburse MCCI for Ms. A.O.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, 21st Century North America Insurance Company did not challenge MCCI's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, 21st Century North America Insurance Company is liable for double damages.

85.     A Florida resident named Ms. W.W. was injured in an accident by an individual insured under Foremost Signature Insurance Company's insurance policy. Ms. W.W.'s

**THIRD AMENDED COMPLAINT**

medical expenses were subsequently paid by MCCI whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Following the accident, Foremost Signature Insurance Company indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Ms. W.W. However, Foremost Signature Insurance Company did not pay or reimburse MCCI for Ms. W.W.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, Foremost Signature Insurance Company did not challenge MCCI's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, Foremost Signature Insurance Company is liable for double damages.

86.     A California resident named Mr. R.P. was injured in an accident by an individual insured under 21st Century Insurance Company's insurance policy. Mr. R.P.'s medical expenses were subsequently paid by Plum Health Care Group whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Following the accident, 21st Century Insurance Company indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Mr. R.P. However, 21st Century Insurance Company did not pay or reimburse Plum Health Care Group for Mr. R.P.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, 21st Century Insurance Company did not challenge Plum Health Care Group's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, 21st Century Insurance Company is liable for double damages.

87.     A California resident named Ms. C.B. was injured in an accident by an individual insured under Mid-Century Insurance Company's insurance policy. Ms. C.B.'s medical expenses were subsequently paid by Plum Health Care Group whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Following the accident, Mid-Century Insurance Company indemnified its insured and made payments,

**THIRD AMENDED COMPLAINT**

covering medical items and services, pursuant to a settlement with Ms. C.B. However, Mid-Century Insurance Company did not pay or reimburse Plum Health Care Group for Ms. C.B.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, Mid-Century Insurance Company did not challenge Plum Health Care Group's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, Mid-Century Insurance Company is liable for double damages.

88.    A Michigan resident named Ms. R.K. was injured in an accident by an individual insured under Farmers Insurance Company of Arizona's insurance policy. Ms. R.K.'s medical expenses were subsequently paid by Reliance ACO whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs.  Following the accident, Farmers Insurance Company of Arizona indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Ms. R.K. However, Farmers Insurance Company of Arizona did not pay or reimburse Reliance ACO for Ms. R.K.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, Farmers Insurance Company of Arizona did not challenge Reliance ACO's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, Farmers Insurance Company of Arizona is liable for double damages.

89.    An Ohio resident named Mr. J.D. was injured in an accident by an individual insured under Farmers Insurance Exchange's insurance policy. Mr. J.D.'s medical expenses were subsequently paid by SummaCare whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs.  Following the accident, Farmers Insurance Exchange indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Mr. J.D. However, Farmers Insurance Exchange did not pay or reimburse SummaCare for Mr. J.D.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, Farmers

**THIRD AMENDED COMPLAINT**

Insurance Exchange did not challenge SummaCare's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, Farmers Insurance Exchange is liable for double damages.

90.     An Ohio resident named Mr. P.A. was injured in an accident by an individual insured under Farmers Insurance Company of Columbus, Inc.'s insurance policy. Mr. P.A.'s medical expenses were subsequently paid by SummaCare whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs.  Following the accident, Farmers Insurance Company of Columbus, Inc. indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Mr. P.A. However, Farmers Insurance Company of Columbus, Inc. did not pay or reimburse SummaCare for Mr. P.A.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, Farmers Insurance Company of Columbus, Inc. did not challenge SummaCare's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, Farmers Insurance Company of Columbus, Inc. is liable for double damages.

91.     An Ohio resident named Mr. J.C. was injured in an accident by an individual insured under Farmers Insurance Company Grand Rapids, Michigan's insurance policy. Mr. J.C.'s medical expenses were subsequently paid by SummaCare whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs.  Following the accident, Farmers Insurance Company Grand Rapids, Michigan indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Mr. J.C. However, Farmers Insurance Company Grand Rapids, Michigan did not pay or reimburse SummaCare for Mr. J.C.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, Farmers Insurance Company Grand Rapids, Michigan did not challenge SummaCare's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, Farmers Insurance Company Grand Rapids,

**THIRD AMENDED COMPLAINT**

Michigan is liable for double damages.

92.     An Ohio resident named Ms. L.H. was injured in an accident by an individual insured under Coast National Insurance Company's insurance policy. Ms. L.H.'s medical expenses were subsequently paid by SummaCare whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs.  Following the accident, Coast National Insurance Company indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Ms. L.H. However, Coast National Insurance Company did not pay or reimburse SummaCare for Ms. L.H.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, Coast National Insurance Company did not challenge SummaCare's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, Coast National Insurance Company is liable for double damages.

93.     A Florida resident named Ms. M.R. was injured in an accident by an individual insured under 21st Century Preferred Insurance Company's insurance policy. Ms. M.R.'s medical expenses were subsequently paid by Verimed IPA whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs.  Following the accident, 21st Century Preferred Insurance Company indemnified its insured and made payments, covering medical items and services, pursuant to a settlement with Ms. M.R. However, 21st Century Preferred Insurance Company did not pay or reimburse Verimed IPA for Ms. M.R.'s medical expenses within the requisite time frame, as required by a primary payer. Additionally, 21st Century Preferred Insurance Company did not challenge Verimed IPA's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, 21st Century Preferred Insurance Company is liable for double damages.

## **REPRESENTATIVE FACTS**

94.     Numerous Medicare beneficiaries ("Medicare Beneficiaries") were enrolled in

**THIRD AMENDED COMPLAINT**

Medicare Advantage plans administered by MAOs/MA Plans.  Such MAOs/MA Plans have assigned their recovery rights to Plaintiffs. These Medicare Beneficiaries suffered injuries in the United States wherein Plaintiffs and the putative Class Members paid for medical services, treatment, drugs, and/or supplies.  However, the medical expenses were required to be paid by Defendants.

95.     The Medicare Beneficiaries entered into settlement agreements with Tortfeasors that were insured with Defendants after Medicare Beneficiaries and Tortfeasors were involved in accidents wherein the Medicare Beneficiaries suffered physical injures.  The medical expenses associated with such injuries were provided by Plaintiffs and the putative Class Members.  Defendants issued payments following the settlements between the Medicare Beneficiaries and Torfeasors.  These settlement payments demonstrated Defendants' responsibility to reimburse Plaintiffs and the putative Class Members under the Medicare Act for the medical expenses of the Medicare Beneficiaries that arose out of the accidents between the Medicare Beneficiaries and Tortfeasors insured by Defendants.  As such, Defendants, the primary payers, were required to make appropriate reimbursement for the conditional Medicare benefits advanced by Plaintiffs and the putative Class Members on behalf of the Medicare Beneficiaries.  Defendants failed to pay or reimburse the Medicare Beneficiaries' MAOs/MA Plans for the payments made by the MAOs/MA Plans that were required to be paid by Defendants as a result of the Medicare Beneficiaries' injuries.

96.     The MAOs/MA Plans, Full Risk Payers and/or their assignee(s) suffered a monetary injury because of Defendants' failures to pay or otherwise reimburse the MAOs/MA Plans, Full Risk Payers and/or their assignee(s).

97.     The basis of allegations in paragraphs herein stem from Plaintiffs' review of claims data.  Plaintiffs have identified settlements which followed incidents involving Plaintiffs' beneficiaries and Defendant's insureds (Tortfeasors) where Plaintiffs' beneficiaries sustained injuries that required medical treatment. Such medical treatment

was provided by Plaintiffs' MAOs/MA Plans. When Tortfeasors and Medicare Beneficiaries entered into settlements to resolve claims made against Tortfeasors, Defendant indemnified its insured Tortfeasors by making settlement payments. The data reviewed by Plaintiffs indicates that Defendant never reimbursed Plaintiffs' MAOs/MA Plans for the medical treatments after Defendant advanced payments as part of the settlement agreements with the Medicare Beneficiaries.

98.    And, based on the nature of the medical treatments and Defendants' failure to reimburse Plaintiffs' MAOs/MA Plans for those medical expenses, the data supports the good-faith allegation that Defendants' failure to reimburse medical expenses as primary payers is widespread and systematic. In fact, Defendants have a practice and course of conduct to not properly pay and/or of fail to reimburse the secondary payer, such as Plaintiffs and the Class Members following settlements with Medicare Beneficiaries. Full details of those settlements are in Defendants' possession and will be located and assessed through the process of discovery.

99.    For the purposes of alleging a plausible claim under Fed. R. Civ. P. 8, Plaintiffs are not required to plead with particularity any specific medical treatment(s) that was not reimbursed by Defendants, i.e., the who, what, where, and when. That sort of information is, by definition, only required for claims involving fraud or deceit. *See* Fed. R. Civ. P. 9(b). And, considering the factual allegations regarding claims and settlements were located using various databases and claims data, there are sufficient alleged facts to support the elements of a claim under the Medicare Secondary Payer laws.

100.   This data shows many insureds/Medicare beneficiaries who were involved in settlements.  These scores of examples of claims are just the tip of the iceberg, i.e., only those claims that a Farmers entity voluntarily disclosed to the  databases.  There are likely many thousands of claims, related to the Assignors alleged above.  However, the full details of those claims are only in the Defendants' possession and will need to be identified through discovery.

31

**THIRD AMENDED COMPLAINT**

## CLASS DEFINITION

101.  The putative class is defined as:

All non-governmental organizations, and/or their assignees that provide benefits under Medicare, in the United States of America and its territories, who made payments for medical items and services on behalf of their beneficiaries for which Defendants have not reimbursed in full or part after Defendants entered into settlements with Medicare Beneficiaries enrolled in a Medicare Advantage Plan.

This class definition excludes (a) Defendants, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

## CAUSE OF ACTION

102.  Defendants failed to appropriately reimburse Class Members after entering into settlements with claimants Medicare beneficiaries whose Medicare plans were administered by a Class Member.

103.  The Class Members advanced Medicare payments on behalf of their beneficiaries for medical treatment and/or supplies for which Defendants was responsible as primary payer. Defendants was primarily responsible by virtue of entering into settlements with Medicare beneficiaries enrolled in a Medicare Advantage plan administered by a Class Member.  Class Members paid for the beneficiaries' Medicare Services when Defendants had the primary obligation to do so. Accordingly, Plaintiffs seek damages on behalf of themselves and similarly situated MAOs/MA Plans and their assignees for Defendants' violations of the MSP provisions.

## COUNT I

### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

104.  Plaintiffs incorporate by reference paragraphs 1-103 of this Complaint.

105.  Plaintiffs assert a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of themselves and all similarly-situated MAOs/MA Plans.

32

**THIRD AMENDED COMPLAINT**

106.   The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the Defendants were primary payer for a claim covered by Medicare; (2) the Defendants did not make the primary payment or reimburse the Medicare benefit provider for its payment; and (3) damages.

107.   Defendants entered into settlement agreements with Medicare beneficiaries enrolled in the Class Members' plans and whose Medicare Services were paid for by the Class Members, including entities that assigned their recovery rights to Plaintiffs, i.e., those entities "that provide Medicare benefits to Medicare beneficiaries for medical services, treatment, and/or supplies under Medicare." Accordingly, in each case Defendants were primary payer for all Medicare Services instead of the Plaintiffs and the Class Members.

108.   A number of Medicare beneficiaries were involved in incidents which resulted in the provision of Medicare Services.

109.   In this case, Defendants failed to administratively appeal the MAOs/MA Plans' right to reimbursement within the administrative remedies period on a class wide basis. Defendants, therefore, is time-barred from challenging the propriety of reimbursement or the amounts paid.

110.   Instead, the Class Members and entities that have assigned their recovery rights to Plaintiffs paid for those items and services as part of providing Medicare benefits.

111.   Those payments were conditional payments since the Defendants was, by law, primary payer under the MSP provisions. Pursuant to the MSP provisions, Defendants is required to reimburse Class Members for those payments when this responsibility is demonstrated by the Defendants' settlements with Medicare beneficiaries enrolled in Medicare Advantage plans administered by the Class Members.

112.   Failure to reimburse Plaintiffs and the Class Members for making payments has enabled Defendants to circumvent their responsibilities under the MSP provisions

113.   Defendants have derived substantial profit by placing the burden of financing

**THIRD AMENDED COMPLAINT**

medical services and/or supplies squarely on the shoulders of MAOs/MA Plans when Defendants was obligated to reimburse MAOs/MA Plans for such medical expenses by virtue of entering into settlements with Medicare beneficiaries.

114.    Pursuant to 42 U.S.C. § 1395y(b)(3)(A), Plaintiffs and the Class Members are entitled to double damages from Defendants due to: 1) Defendants' failure to provide primary payment for medical expenses incurred by Medicare beneficiaries; and 2) Defendants' failure to appropriately reimburse Plaintiffs or Class Members who instead paid for such medical expenses

## CLASS ALLEGATIONS

### I.    National Damages and Injunctive Relief Classes

115.   This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries' medical expenses, when Defendants should have made those payments as primary payer and should have reimbursed the Class Members.

116.   As discussed in this class action Complaint, Defendants failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP provisions.  This failure to reimburse applies to Plaintiffs, as the rightful assignees of those organizations that assigned their recovery rights to Plaintiffs, and to all Class Members.  Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm.  This case, thus, is well suited for class-wide resolution.

117.   Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendants to make such payments.  The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers.  Defendants' failure to reimburse Plaintiffs and Class

**THIRD AMENDED COMPLAINT**

Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

118.   The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy shown as follows:

    a.    Numerosity:  There are hundreds of MAOs/MA Plans throughout the United States who were not reimbursed by Defendants after Defendants entered into a settlement with a Medicare Beneficiary enrolled in Medicare or Medicare Advantage plan administered by an MAO/MA Plan.  Thus, the numerosity element for class certification is met.

    b.    Commonality: Questions of law and fact are common to all members of the Class. Specifically, Defendants' misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare. Defendants failed to make reimbursement payments, report settlements involving Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, i.e., whether Defendants failed to comport with their statutory duty to pay or reimburse MAOs/MA Plans pursuant to the MSP provisions. Each Class Member shares the same needed remedy, i.e., reimbursement. Plaintiffs seek to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare enrollees, as a result of Defendants' practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

    c.    Typicality:  Plaintiffs' claims are typical of the Class because their claims arise from the same course of conduct by Defendants, *i.e.*, failure to

make payment and failure to reimburse MAOs/MA Plans.  Plaintiffs' claims are, therefore, typical of the Class.

d.      Adequacy:  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs' interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members.  In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

119.   The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("National Damages Class").  Defendants, whether deliberately or not, failed to make required payments under the MSP provisions and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiffs, thus depriving both Plaintiffs, as assignee of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

120.   Proceeding with a damages class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated MAOs/MA Plans to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties.  The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of

**THIRD AMENDED COMPLAINT**

scale.

121.    Ascertaining and administering the proposed National Damages Class will be relatively simple.  Defendants have entered into settlement agreements with claimants who are also Medicare beneficiaries.  Once that data identifying these settlements is compiled and organized, Plaintiffs can determine which of the claimants were Medicare beneficiaries at the time of those settlements.  Then, using the database, Plaintiffs and the Class Members can identify those payments made for medical treatment where the Defendants were (1) Defendants was primarily obligated to make payment and (2) Defendants failed to reimburse the MAO for making payment. Indeed, two Florida state classes were recently certified in *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, Case No. 2015-1946 CA-01 (Fla. 11th Jud'l Cir. Ct. Feb. 2, 2017) and *MSPA Claims 1, LLC v. IDS Property Casualty Ins. Co.*, Case No. 2015-27940 CA-01 (Fla. 11th Jud'l Cir. Ct. Apr. 20, 2017) using the same methodology.

122.    The Class is also properly brought and should be maintained as a class action under Rule 23(b)(2) ("Injunctive Relief Class").  Defendants has acted or refused to act on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**II.        National Issues Class**

123.    Plaintiffs seek, in the alternative to a National Damages Class and Injunctive Relief Class, a National Issues Class.

124.    Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

125.    In an effort to materially advance the litigation as a whole, pursuant to Rule 23(c)(4), Plaintiffs bring this action on behalf of themselves and the Class Members to resolve, *inter alia*, several important issues:

    a.        Whether Defendants occupies primary payer status as defined by the

37

**THIRD AMENDED COMPLAINT**

MSP provisions;

b.   Whether Defendants' settlements with Medicare beneficiaries qualify them as primary payers for medical expenses arising out of covered incidents;

c.   Whether Defendants properly complied with its reporting requirements;

d.   Whether Class Members are entitled to double damages;

e.   Whether Defendants' failure to timely challenge the reasonableness and/or necessity of payments made by the Class waives the defense; and

f.   Other threshold legal and factual questions that apply to the entire class.

126.   The Issues Class would be "carved at the joints" after disposition of the preliminary questions of the Defendants' status as primary payer and its duties flowing therefrom.  The individual Class Members would then be able to rely upon the preclusive effect of the determination of Defendants' status as primary payer to then individually litigate specific issues such as damages.

127.   The Issues Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

g.   Numerosity: Individual joinder of the Issues Class Members would be wholly impracticable. There are hundreds of MAOs/MA Plans throughout the United States who were not reimbursed by Defendants after it entered into a settlement with a Medicare beneficiary enrolled in a Medicare Advantage plan administered by an MAO. Thus, the numerosity element for class certification is met.

h.   Commonality: Questions of law and fact are common to the Issues Class. As this is an issues class under Rule 23(c)(4), there are by definition

**THIRD AMENDED COMPLAINT**

common questions of law applicable to all Class Members.

i.      Typicality:  Plaintiffs' claims are typical of the Class because their claims arise from the same course of conduct by Defendants, *i.e.*, failure to make payment and failure to reimburse MAOs/MA Plans.  Plaintiffs' claims are, therefore, typical of the Class.

j.      Adequacy:  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Their interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members.  In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

128.   The Issues Class is properly brought and should be maintained as a class action under Rule 23(b) because an issues class action in this context is superior.  Pursuant to Rule 23(b)(3), common issues predominate over any questions affecting only individual Class Members.  Proceeding with an issues class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated MAOs/MA Plans to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties.  The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

**THIRD AMENDED COMPLAINT**

**JURY TRIAL DEMAND**

129.   Plaintiffs demand a trial by jury on all of the triable issues within this pleading.

**PRAYER FOR RELIEF**

130.   WHEREFORE, Plaintiffs, individually and on behalf of the Class Members described herein, respectfully request that this Honorable Court:

      a.   find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4), and certify the respective Classes;

      b.   designate Plaintiffs as representatives for the respective Classes and Plaintiffs' undersigned counsel as Class Counsel for the respective Classes; and

      c.   issue a judgment against Defendants that:

            i.   grants Plaintiffs and the Class Members a reimbursement of double damages for those moneys the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

           ii.   grants Plaintiffs and the Classes alleged herein equitable relief by issuing an injunction ordering Defendants to comply with its statutory duties, lest Plaintiffs and the Class Members suffer irreparable future harm;

           iv.   grants Plaintiffs and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

           v.   grants Plaintiffs and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated:  May 29, 2018            **BAUM HEDLUND ARISTEI & GOLDMAN, P.C.**

                                      /s/ R. Brent Wisner

**THIRD AMENDED COMPLAINT**

R. Brent Wisner, Esq. (SBN 276023)
rbwisner@baumhedlundlaw.com
Michael L. Baum, Esq. (SBN 119511)
mbaum@baumhedlundlaw.com
Pedram Esfandiary, Esq., (SBN 312569)
pesfandiary@baumhedlundlaw.com
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel:  (310) 207-3233
Fax:  (310) 820-7444

**PENDLEY, BAUDIN & COFFIN, LLP**
Christopher L. Coffin (*pro hac vice*)
Tracy L. Turner (to be moved *pro hac vice*)
Courtney L. Stidham (to be moved *pro hac vice*)
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Phone: (504) 355-0086
ccoffin@pbclawfirm.com
tturner@pbclawfirm.com
cstidham@pbclawfirm.com
*Attorneys for Plaintiffs*

**THIRD AMENDED COMPLAINT**