UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 262, filed November 23, 2021)

## I.    INTRODUCTION

Plaintiffs MAO-MSO Recovery II, LLC, MSP Recovery, LLC, and MSPA Claims 1, LLC filed this action on May 3, 2017, against various corporate entities within the Farmers Insurance Group of Companies. Dkt. 1. This case arises out of defendants' alleged failure to reimburse Medicare Advantage Organizations ("MAOs") for medical treatments or expenses paid by plaintiffs on behalf of Medicare beneficiaries who entered into a settlement with defendants. Plaintiffs MSP Recovery Claims, Series LLC and MSPA Claims 1, LLC ("plaintiffs") filed the operative fourth amended complaint ("FAC") against Farmers Insurance Exchange, Farmers Insurance of Columbus, Inc., Mid-Century Insurance Company, Fire Insurance Exchange, 21st Century Centennial Insurance Company, 21st Century North America Insurance Company, 21st Century Preferred Insurance Company, Foremost Property and Casualty Insurance Company, and Foremost Insurance Company Grand Rapids, Michigan (collectively, "Defendants") on December 29, 2020. Dkt. 246 ("FAC"). In the FAC, plaintiffs assert that they are assignees of numerous MAOs and state a single cause of action for double damages pursuant to the Medicare Secondary Payer ("MSP") provisions of the Medicare Act, 42 U.S.C. § 1395y(b) et seq. Id. ¶¶ 101-111. Plaintiffs contend that (1) they provided Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage Program; (2) these beneficiaries suffered injuries related to an accident wherein plaintiffs paid for the medical treatment; and (3) defendants were ultimately responsible for paying for these expenses. Id. ¶ 3. Plaintiffs claim that "Defendants' responsibility for such payments was demonstrated when Defendants entered into settlements with Medicare beneficiaries." Id. Plaintiffs assert that defendants have a duty to reimburse plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

because defendants' insureds committed tortious acts which injured Medicare beneficiaries, and when defendants' insureds and Medicare beneficiaries "entered into settlements to resolve claims made against [defendants' insureds], Defendants indemnified its insured(s) by making settlement payments. . . . Such settlements triggered Defendants' obligations to make primary payment for the medical items and/or services furnished to the Medicare beneficiary." Id. ¶ 17.

Plaintiffs are collections agencies that allege that they are the assignees of numerous MAOs and related "first tier" and "downstream" entities such as Management Services Organizations ("MSOs") and Independent Practice Associations ("IPAs") that deliver Medicare benefits under Medicare Advantage ("MA") Plans.[1] Id. ¶¶ 54-58. Pursuant to a series of assignment agreements described in the FAC, these entities have allegedly assigned plaintiffs "all legal rights of recovery and reimbursement for health care services and Medicare benefits provided by health care organizations that administer Medicare benefits for beneficiaries under Medicare." Id. ¶ 43.

Plaintiffs allege that numerous Medicare beneficiaries that suffered injuries were enrolled in MA Plans administered by the relevant MAOs/MA Plans, and that though the MAOs/MA Plans paid for the medical services, treatment, drugs, and/or supplies related to the beneficiaries' injuries, defendants were required to pay for these expenses. Id. ¶ 87. Specifically, plaintiffs state that Medicare beneficiaries entered into settlement agreements with tortfeasors that were insured by defendants after the beneficiaries and tortfeasors were involved in accidents where the beneficiaries were injured. Id. ¶ 88. Plaintiffs assert that the fact that defendants issued payments following the settlements

---

[1] MSOs are organizations owned by a group of physicians, a physician–hospital joint venture, or investors in conjunction with physicians. MSOs provide practice management and administrative support services to individual physicians and group practices. An IPA is an association of independent physicians, or other organization that contracts with independent physicians, and provides services to managed care organizations. An Accountable Care Organization ("ACO") is a group of doctors, hospitals, and other health care providers, who come together voluntarily to give coordinated care to their Medicare patients. FAC at 17 n. 11. These "first-tier" or "downstream" entities contract with MAOs to provide certain services for Medicare beneficiaries. See 42 C.F.R. § 422.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

demonstrates defendants' responsibility to reimburse plaintiffs under the Medicare Act for the medical expenses of the beneficiaries.  FAC ¶¶ 88.

There have been numerous similar lawsuits filed by plaintiffs throughout the country against other insurance companies.  See MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co., No. 17-22539-CIV, 2018 WL 3654779, at *1 n. 2 (S.D. Fla. Aug. 1, 2018) (collecting cases).  There is also a related case currently pending before this Court.  See MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al, No. 2:17-cv-02522-CAS-PLA.

On September 6, 2017, defendants moved to dismiss the first amended complaint for lack of standing and failure to state a claim upon which relief can be granted.  Dkt. 53 at 4.  The Court granted the motion on November 20, 2017.  Dkt. 76.  Although the first amended complaint generally alleged that plaintiffs had valid assignment agreements with numerous MAOs, plaintiffs had failed to allege the identity of the assignors whose reimbursement rights they claimed to own, the dates of the assignments, or the essential terms of those assignments.  Id. at 12.  Accordingly, the Court concluded that the first amended complaint lacked sufficient factual allegations to demonstrate that the alleged assignments were valid.  Id.  Additionally, although the first amended complaint included representative allegations regarding four Medicare beneficiaries, plaintiffs did not identify which assignors were involved and failed to trace any injury suffered by the assignors to the conduct of any single defendant.  Id. at 11. Rather, the first amended complaint included only blanket allegations against all defendants.  Id.  The Court accordingly dismissed the action for lack of standing.  Id. at 11-13.

On December 11, 2017, plaintiffs filed their second amended complaint ("SAC").  Dkt. 77.  The SAC listed and briefly described assignment agreements between plaintiffs and 78 different MAOs, MSOs, IPAs, and related entities.  Id. ¶¶ 61-139.  On May 7, 2018, the Court granted defendants' motion to dismiss the SAC with leave to amend.  Dkt. 97.  The Court found that the unredacted SAC included sufficient allegations to demonstrate valid assignment agreements because the pleadings identified the alleged assignors and the essential terms of the assignments.  Id. at 14.  The Court also found the representative facts regarding four Medicare beneficiaries "generally sufficient" to demonstrate that the respective assignors suffered an injury-in-fact.  Id. at 13.  However, the Court concluded that the SAC still failed to satisfy Article III's traceability requirement because there was nothing in the pleadings tying any claim by one or more

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | |

of the assignors to any specific named defendant. Id. at 16. The Court accordingly granted the motion to dismiss with leave to amend. Id. at 19.

On May 29, 2018, plaintiffs filed their third amended complaint ("TAC"). Dkt. 98. On July 9, 2018, defendants filed a motion to dismiss the TAC and separate misjoined defendants. Dkt. 133. Defendants moved to dismiss all claims against Farmers Insurance Company of Arizona and Security National Insurance Company pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Id. at 12-18. The Court granted this motion, thereby dismissing these defendants from the case. Dkt. 140.

Defendants also (1) moved to dismiss eleven of the fourteen defendants for improper venue pursuant to Rule 12(b)(3); (2) moved to sever the claims against each defendant on the grounds that they were improperly joined; (3) moved to dismiss all claims for lack of standing; and (4) moved to dismiss the action pursuant to Rule 12(b)(6) on the ground that plaintiffs failed to allege facts sufficient to state a claim under 42 U.S.C. § 1395y(b)(3)(A). Dkt. 133. The Court denied these motions. Dkt. 140. On September 4, 2018, the remaining defendants filed their answer to the TAC. Dkt. 141.

On December 29, 2020, plaintiffs filed the FAC. Dkt. 246. In the FAC, which added Foremost Insurance Company Grand Rapids, Michigan; Foremost Property and Casualty Company; Fire Insurance Exchange; and Mid-Century Insurance Company as defendants, plaintiffs assert the same legal claim for relief: double damages pursuant to Medicare Secondary Payer private cause of action, 42 U.S.C. § 1395y(b)(3)(A). FAC ¶¶ 101-111. On March 8, 2021, defendants filed their answer to the FAC. Dkt. 249.

On November 23, 2021, defendants filed a motion for summary judgment or partial summary judgment. Dkt. 262-1 ("Mot."). Defendants also filed a statement of uncontroverted facts and conclusions of law. Dkt. 262-2 ("SUF"). On April 11, 2022, plaintiffs submitted their opposition to defendants' motion for summary judgment. Dkt. 291 ("Opp."). Plaintiffs also submitted a statement of genuine disputes of material fact. Dkt. 292 ("GDF"). On April 25, 2022, defendants submitted their reply. Dkt. 312 ("Reply").

On November 23, 2021, plaintiffs filed a motion for class certification. Dkt. 268 ("CC Mot."). On April 11, 2022, defendants submitted their opposition to plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

motion for class certification.  Dkt. 286 ("CC Opp.").  On April 25, 2022, plaintiffs submitted their reply.[2]  Dkt. 311 ("CC Reply").[3]

The Court held a hearing on May 9, 2022.  On May 10, 2022, plaintiffs moved for leave to file a supplemental brief in opposition to defendants' motion for summary judgment.  Dkt. 329.  On May 11, 2022, the Court granted plaintiffs' motion for leave to file a supplemental brief, and granted defendants leave to file an optional response.  Dkt. 332.  On May 16, 2022, plaintiffs filed their supplemental brief.  Dkt. 333 ("Plfs' Supp.").  On May 20, 2022, defendants filed their response to plaintiffs' supplemental brief.  Dkt. 334 ("Defs' Supp.").

Having carefully considered the parties arguments, the Court finds and concludes as follows.

## II.    STATUTORY BACKGROUND

Congress enacted the Medicare Act in 1965 to establish a health insurance program to benefit the elderly and disabled.  See Social Security Amendments of 1965, Pub. L.

---

[2]  On May 5, 2022, plaintiffs filed three documents in support of their opposition to defendants' motion for summary judgment.  See Dkts. 322-324.  Although these documents were untimely, the Court reviewed them, and determined that neither MSP's Purchase and Sale and Assignment Agreement with SummaCare Inc. nor the two legal briefs from other cases, which address defendants' pre-suit notice requirement argument, are relevant to the Court's grounds for granting summary judgment in this case. Likewise, the Court reviewed the declaration of Carlos Manalansan, Vice President and Deputy General Counsel of Emblem Health, Inc., which plaintiffs filed on May 8, 2022, and found that Manalansan's declaration is not relevant to the Court's reasons for granting summary judgment.  See Dkt. 327-1.

[3] Given that the Court **GRANTS** defendants' motion for summary judgment for the reasons described herein, plaintiffs' motion for class certification is **DENIED AS MOOT**.  See Saeger v. Pac. Life Ins. Co., 305 F. App'x 492, 493 (9th Cir. 2008) (affirming denial of class certification as moot following the grant of summary judgment); see also Taylor v. Waddell & Reed, Inc., No. 09cv2909 AJB (WVG), 2012 WL 10669, at *5 (S.D. Cal. Jan. 3, 2012) ("Because the Court grants the motions for partial summary judgment . . . the Court therefore denies as moot Plaintiffs' motion for conditional class certification.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | |

No. 89-97, 79, Stat. 286 (codified as amended at 42 U.S.C. §§ 1395 to 1395kkk-1).  The
Medicare Act consists of five parts: Part A, Part B, Part C, Part D and Part E.  Parts A
and B regulate the traditional fee-for-service Medicare program administered by the
Centers for Medicare & Medicaid Services ("CMS").  See 42 U.S.C. §§ 1395c to 1395i-
5; §§ 1395-j to 1395-w.  As described below, Part C is the Medicare Advantage program
pursuant to which Medicare beneficiaries may elect to rely on private insurers, i.e.
Medicare Assistance Organizations, or "MAOs," to receive their Medicare benefits.  See
42 U.S.C. §§ 1395w-21 to w-28.  Part D provides for prescription drug coverage, and
Part E contains generally applicable definitions and exclusions.  One such exclusion is
the MSP provisions of the Act.  See 42 U.S.C. § 1395(y)b).

In 1980, Congress passed the MSP provisions to contain rising Medicare costs.
See Zinman v. Shalala, 76 F.3d 841, 843 (9th Cir. 1995).  Before the MSP's passage,
Medicare often acted as a primary insurer—that is, Medicare paid for its enrollees'
medical expenses even if there was overlapping insurance coverage or when a third party
had an obligation to pay for the expenses.  The MSP makes Medicare a "secondary
payer" and shifts responsibility for medical payments to other group health plans,
workers' compensation, as well as no-fault and liability insurers, which are considered
"primary plans."  42 U.S.C. § 1395y(b)(2).  The MSP prohibits Medicare from paying for
items or services if "payment has been made or can reasonably be expected to be made"
by a primary payer.  Id. § 1395y(b)(2)(A)(ii).

If a primary payer "has not made or cannot reasonably be expected to make
payment with respect to the item or service promptly," Medicare is authorized to make a
"conditional payment."  Id. § 1395y(b)(2)(B)(i).  However, since Medicare remains the
secondary payer, the primary payer must then reimburse Medicare for all conditional
payments "if it is demonstrated that such primary plan has or had a responsibility to make
payment with respect to such item or service."  Id. § 1395y(b)(2)(B)(ii).  This
responsibility may be demonstrated by "a judgment, a payment conditioned upon the
recipient's compromise, waiver, or release (whether or not there is a determination or
admission of liability) of payment for items or services included in a claim against the
primary plan or the primary plan's insured, or by other means."  Id.

To facilitate recovery of these conditional payments, the MSP provides for a right
of action by the United States, for double damages, against "any or all entities that are or
were required or responsible" to make payment.  Id. § 1395y(b)(2)(B)(iii).  In addition to
the right of action by the United States, Congress in 1986 established "a private cause of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-02559-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | |

action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)." Id. § 1395y(b)(3)(A). "The private cause of action allows Medicare beneficiaries and healthcare providers to recover medical expenses from primary plans." Parra v. PacifiCare of Arizona, Inc., 715 F.3d 1146, 1152 (9th Cir. 2013).

In 1997, Congress enacted Medicare Part C, now known as the Medicare Advantage ("MA") program. 42 U.S.C. § 1395w–21 to w–28. Part C allows eligible participants to opt out of traditional Medicare and instead obtain benefits through MA Plans administered by MAOs, which are private, for-profit insurers that operate under contract with the Centers for Medicare & Medicaid Services ("CMS") and receive a fixed payment for each enrollee. If the cost of providing benefits to these enrollees exceeds the fixed payment, the MAO bears the loss. However, if the cost of care is less than the fixed payment, the MAO keeps the difference as profit. MAOs are thus incentivized to provide services more efficiently than traditional fee-for-service Medicare. See H.R. Rep. No. 105–149, at 1251 (1997) (Part C is intended to "allow beneficiaries to have access to a wide array of private health plan choices in addition to traditional fee-for-service Medicare . . . . [and] enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options").

Part C also includes a secondary payer provision that authorizes an MAO to charge a primary payer for medical expenses paid on behalf of an enrollee. See 42 U.S.C. § 1395w–22(a)(4). For each MA plan, the MAO "must" "[i]dentify payers that are primary to Medicare," "[i]dentify the amounts payable by those payers," and "coordinate its benefits to Medicare enrollees with the benefits of the primary payers." 42 C.F.R. §422.108(b).

Although the statute does not expressly state that an MAO can avail itself of the MSP private cause of action under § 1395y(b)(3)(A), CMS regulations state that an "[MAO] will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108(f). In addition, both the Eleventh and Third Circuits have held that an MAO may assert claims under the MSP private cause of action in order to recover conditional payments it made on behalf of its enrollees. See MSP Recovery, LLC v. Allstate Ins. Co., 835 F.3d 1351, 1361 (11th Cir. 2016); In re Avandia Mktg., Sales Practices, & Prods. Liab. Litig., 685 F.3d 353, 367 (3d Cir. 2012). Finally, only one circuit, the Eleventh Circuit, has addressed whether MAO

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | Date | May 25, 2022 |
|----------|------------------------|------|--------------|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | |

subcontractors may sue under the MSP Act.  The Eleventh Circuit held that subcontractors of MAOs are not automatically precluded from suing under the MSP Act, stating: "downstream actors that have made conditional payments in an MAO's stead or that have reimbursed an MAO for its conditional payment can bring suit for double damages against the primary payer."  MSP Recovery Claims v. ACE Am. Ins. Co., 974 F.3d 1305, 1316 (11th Cir. 2020).

## III.   FACTUAL BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.

### A.   Introduction

Plaintiffs assert 88 distinct, individual claims in the FAC in support of Count I for Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A).  SUF No. 2.  Of these 88 claims, plaintiffs state in their opposition that they "continue[] to prosecute 55 claims."  Opp. at 18 n. 8.  As a result, there is no remaining claim in this action that was alleged in plaintiffs' original complaint.[4]

Plaintiffs submit as evidence spreadsheets created by plaintiffs or their counsel that contain certain data plaintiffs state they use to identify assignors and enrollees, and codes for alleged types of treatment and diagnoses, service dates, and numbers for the dollar amounts the assignors supposedly paid (either to a provider or from an MAO-

_____

[4] Courts across the country have expressed frustration with plaintiffs' approach to litigating these claims.  See MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co., No. 6:19-CV-00211 (MAD/TWD), 2019 WL 4222654, at *6 (N.D.N.Y. Sept. 5, 2019) ("Plaintiffs' strategy, it appears, is to throw their allegations into as many federal courts as possible and see what sticks.  In each of these cases, Plaintiffs file deficient complaints, rely on courts to point out the problems, and then repeatedly amend their pleadings until they get it right. . . . Plaintiffs' tactics are a flagrant abuse of the legal system.  A pleading is not meant to be a means by which a party can discover if they actually have a case."); see also MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co., 994 F.3d 869, 871 (7th Cir. 2021) ("This lawsuit mirrors scores like it filed in federal courts throughout the country that have all the earmarks of abusive litigation and indeed have drawn intense criticism from many a federal judge.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL           'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

subcontractor to an MAO). SUF No. 3. Plaintiffs state they compile information from multiple sources to create the spreadsheets. Id.

Plaintiffs added 85 of the 88 claims to this action when they filed their Fourth Amended Complaint on December 29, 2020. SUF No. 20. Fifty-four of these claims were reported to CMS by the applicable defendant more than three years prior to the date the claims were added to this case. Id. No. 21.

**B.    Evidentiary Issues**

Defendants note that "Plaintiffs have none of the bills their assignors supposedly received, have no copies of actual payments their assignors supposedly made, and none of the assignors' accounting ledgers or similar documents showing that any payments were made, to whom, or the amounts." SUF No. 4. In response, plaintiffs claim that medical providers are required to bill, and health plans are required to pay, through electronic transmissions. GDF No. 4. As a result, they argue, any evidence of bills, payments, or accounting ledgers would be found in electronic data, i.e., the Assignor Data. Id.

Defendants also claim that "Plaintiffs have no medical documentation (or any documentation other than the data points in the spreadsheets) showing that the payments they claim their assignors made, for which Plaintiffs seek damages, were for treatments for injuries sustained in accidents that were insured under the Defendants' policies; and, many of the claim lines in Plaintiffs' Initial Disclosures spreadsheets state, in Plaintiffs' text descriptions within the spreadsheets, they are for medical treatments including flu shots, glaucoma treatments, diabetes treatments, malnutrition evaluations, skin melanoma, fibromyalgia, and other items that are disconnected and not resulting from any injury sustained in the alleged auto accidents." SUF No. 5. In response, plaintiffs claim that defendants' argument "either purposefully ignore[] how diagnosis codes are used in medical claims' data or [have] intentionally chosen to isolate sections of the data provided to mischaracterize the information produced within [plaintiffs'] Initial Disclosures." GDF No. 5.

Defendants also point out that "Plaintiffs do not have evidence that any of the 88 people were actually enrolled with any of the assignors in Medicare plans, or specifically enrolled with any of the assignors at all, or in Medicare plans as opposed to any other plans, such as Medicaid or non-Medicare health insurance plans, that the assignors offer."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

SUF No. 8.  In response, plaintiffs point to the declaration of their Chief Information Officer, Christopher Miranda Jr., wherein Miranda states that "[t]he electronic business records corresponding to those unreimbursed secondary payments are attached as Exhibits 1 to 18" and "[t]he exhibits also reflect that the Medicare beneficiaries were enrolled in Medicare Advantage plans at the times those payments were rendered."  Dkt. 290-16 (Declaration of MSP Recovery, LLC's Chief Information Officer Christopher Miranda Jr. ("Miranda Decl.")) ¶ 44-45.  However, in reviewing Exhibits 1-18 to the Miranda declaration, the Court is unable to confirm from the declaration or the exhibits that the exhibits in fact "reflect that the Medicare beneficiaries were enrolled in Medicare Advantage plans at the times those payments were rendered."  Miranda, who is plaintiffs' Chief Information Officer and custodian of records, "is an attorney who previously worked for one of Plaintiffs' counsel law firms and has no medical, Medicare, claims or insurance experience prior to starting employment with MSP Recovery, LLC in 2017." SUF No. 10.

Additionally, defendants contend that "Plaintiffs have not produced the actual data they allege their affiliate MSP Recovery received from the assignors."  SUF No. 11. While plaintiffs respond that defendants' contention is "false," and that "[t]he Assignor Data was provided to Defendants on June 25, 2021," plaintiffs cite only to paragraph two of the declaration of their counsel, David L. DaPonte, and not to any assignor data.  See GDF No. 11.

Plaintiffs seek reimbursement based on the allegation that defendants failed to provide for primary payment or appropriate reimbursement.  SUF No. 17.  However, "Plaintiffs have no evidence any Defendant failed to pay any bill it received from a medical provider that it was obligated to pay (which an alleged assignor ultimately paid), or that any MAO or MAO-subcontractor ever sought any specific reimbursement and the Defendant failed to comply."  SUF No. 18.  In response, plaintiffs contend that the MSP Act "does not require MSP to prove that Defendants affirmatively 'failed' to pay a 'bill it received' or that any MAO or downstream entity 'sought any specific reimbursement' from Defendant prior to filing suit."  GDF No. 18.

Finally, defendants contend that "Plaintiffs have no evidence and are unable to describe, attest to or in any way demonstrate the initial link in the alleged data chain upon which they rely—the alleged assignors' creation and maintenance of the assignors' data to begin with."  SUF No. 19.  In response, plaintiffs state that "although not required, [plaintiffs have] provided examples from assignors that render this statement disputed."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | |

GDF No. 19.  However, the assignor declarations provided by plaintiff, which attach
spreadsheets similar to the spreadsheets attached to the Miranda declaration, fail to
indicate how the assignor summary data was originally created, or how it was
maintained.  See Dkt. 290-15 (Plfs' Joint Composite Ex. C).  Additionally, the assignor
declarations fail to indicate whether the data and spreadsheets attached thereto are the
data files the assignors originally transferred to plaintiffs.  Id.

C.     The Ownership of Twenty-One Claims by Series 44

Twenty-one of plaintiffs' claims are owned by Series 44-20-388, Series 44-20-354,
Series 44-20-634, Series 44-20-583, Series 44-20-456 and Series 44-20-931 (collectively,
"Series 44"), which are designated series of MSP Recovery Claims Series 44, LLC.  SUF
Nos. 22-33.  Series 44 is a stand-alone LLC, and is not part of or included within plaintiff
MSPRC.  SUF No. 36; GDF No. 36.  Plaintiffs did not own the twenty-one claims when
they were included in the FAC, and do not own them now.  SUF No. 38.  However,
plaintiffs claim that even though they transferred ownership of the twenty-one claims to
Series 44, "Fed. R. Civ. P. 25(c) operated to allow MSPRC to continue the action without
substituting in Series 44."  GDF No. 38.

D.     The Allegedly Untimely Addition of 59 Claims

In the FAC, Plaintiffs added ten new assignment and purchase agreements
obtained from May 2017 through August 2019 to assert fifty-nine new claims that
plaintiffs did not own when they filed this action on March 31, 2017.  SUF No. 39.
Plaintiffs claim that, even though this is true, the fifty-nine added claims relate back to
the initial lawsuit because they involve the same "conduct, transaction, or occurrence" as
the claims in the initial suit.  GDF No. 39.

E.     The Assignment of 82 Claims to "Series" Entities

The assignments for 82 of the 88 claims show that the claims were assigned to
various "series" entities (i.e., Series 17-03-615), and not to either of the named plaintiffs.
See SUF Nos. 41-56.  Each of these "series" entities is a designated series of MSPRC, a
Delaware series limited liability company.  Id.  As a result of these assignments to the
various "series" entities, defendants claim that "even based on Plaintiffs' own allegations
and documents produced, Plaintiffs are not the assignees and do not have the right to sue
for 82 claims because the claims are owned by entities which are not named Plaintiffs in
this action.  Id. No. 56.  While plaintiffs do not dispute these assignments to other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

entities, they claim that MSPRC has standing to sue on behalf of these various "series" entities.  See GDF Nos. 41-56.

### F.      The Allegedly Incomplete Assignments for Fifty-Five Claims

Defendants claim that "[e]ach of the following assignments and purchase agreements describe the claims and/or rights conveyed by reference to [] other extrinsic items necessary to determine which claims are actually conveyed and which claims are excluded, and Plaintiffs do not have any documents, evidence or any other way to identify the designated or excluded claims: (1) AvMed, Inc.; (2) Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.; (3) Connecticare, Inc.; (4) EmblemHealth Services Company, LLC; (5) Health First Health Plans, Inc.; (6) Medical IPA of the Palm Beaches, Inc.; (7) Preferred Primary Care, LLC; (8) Risk Watchers, Inc. and (9) SummaCare Inc."  SUF No. 57.

For example, the "assignment and purchase agreements with Avmed, Inc. conveyed only the 'claims arising from and relating to the data that Assignor (AvMed) has transferred to MSP Recovery pursuant to that certain Evaluation Agreement effective November 12, 2018 … as a result of such parties' failure to pay for health care services provided to any of Assignor's members or enrollees under CMS Contract ID Number H1016,' and excluded: '(i) any of Assignor's right to recover, under any theory, against its network healthcare providers and current and former members, and (ii) Claims belonging to Assignor arising from and related to the GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico.'"  Id. No 58.  However, "Plaintiffs have no documents to show that the 4 claims Plaintiffs allege were assigned and/or sold by AvMed were part of the 'Contract ID Number H1016' and not within a separate CMS Contract ID Number." Id. No. 59.  While plaintiffs contend that they "produced the carve out/subrogation lists on October 6, 2021," GDF No. 59, plaintiffs failed to submit those documents.  See GDF No. 59 (citing Dkt. 290-1 (Declaration of Plaintiffs' counsel David L. DaPonte ("DaPonte Decl")) ¶ 3, which does not attach any evidence).

In total, defendants contend that plaintiffs lack proof that fifty-five claims were conveyed as part of or were not excluded from eight of the twenty-three assignments on which plaintiffs rely.  See SUF Nos. 57-77.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | Date | May 25, 2022 |
|----------|------------------------|------|--------------|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | |

### G.   The Twenty-Three Claims Allegedly Assigned to Plaintiffs by MAO-Subcontractor Assignors

Plaintiffs have asserted twenty-three claims in this case allegedly assigned to them by fourteen MAO-subcontractor assignors.  SUF No. 78.  The following alleged assignors are MAO-subcontractors and not Medicare Advantage Organizations or Plans: (1) Family Physicians Group, (2) Health Care Advisors Services, Inc., (3) Hygea Health Holdings, Inc., (4) MCCI Group Holdings, LLC, (5) Medical Consultants Management, LLC, (6) Medical IPA, (7) PAUC/PHPG/PAG, (8) Plum Healthcare, LLC, (9) Preferred Primary Care, LLC, (10) Risk Watchers, (11) Suncoast Medical Network 2, Inc., (12) Transatlantic Healthcare, (13) Trinity Physicians, LLC, and (14) Verimed IPA, LLC.  Id. No. 79.

Defendants contend that "Plaintiffs have no evidence that these MAO-subcontractor assignors own the right to seek payment or reimbursement on the claims, including proof that the MAO with which the subcontractor contracted is not vested with the exclusive right to seek or sue for such payment or reimbursement – and thus no proof that these assignors could assign any such rights to Plaintiffs."  SUF No. 80.  In response, plaintiffs claim that "[t]he Risk Agreements set forth the fact that the downstream assignors are at risk, and the Assignor Data evidence [i.e., the spreadsheets] is evidence of loss sustained by the assignors."  GDF No. 80.

In particular, defendants point to agreements that show that Trinity, Medical Consultants Management, LLC, and Verimed IPA, LLC each assigned reimbursement rights to other entities.  SUF Nos. 81-83.  In response, plaintiffs argue that the "Risk Agreements set forth the fact that the downstream assignors are at risk," and that "[b]ecause MSP's downstream assignors are at risk, they always retain rights under the MSP Act."  GDF Nos. 81-83.  Additionally, MAO Humana, which owns MCCI Group Holdings, LLC ("MCCI"), sent cease and desist and termination letters to MSP Recovery on August 20, August 24 and again on October 21, 2019, demanding that Plaintiffs "cease and desist pursuing claims" on behalf of MCCI.  SUF No. 84.

### H.   The Eleven Claims from Entities That Do Not Pay Medical Expenses

Defendants contend that "11 claims of the 88 claims alleged by Plaintiffs in this action are from entities that do not pay medical expenses."  SUF No. 90.  In response, plaintiffs state that they are "withdrawing [their] claims related to Plum Healthcare

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02559-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | |

Group, LLC." GDF Nos. 85-88. However, plaintiffs maintain that "the claims from Health First Health Plans are viable claims" because "Health First Health Plans executed a nunc pro tunc assignment, which validly assigned the claims at issue in this litigation to MSP's series LLC." GDF No. 90.

### I.    The Twenty-Five Claims Wherein the Policy Benefit Limits Had Been Exhausted

Defendants note that "[t]he policy benefit limits for 25 claims [] had been exhausted (i.e., paid out) prior to the Plaintiffs' or their assignors' attempt to seek any specific payment on December 29, 2020," and therefore argue that "no damages are recoverable on the claims such that they must be dismissed." SUF No. 91. While plaintiffs do not dispute that the benefit limits for those twenty-five claims had been exhausted, they argue that "[w]hen Medicare asserts a reimbursement claim, a primary plan cannot use exhaustion of policy limits as a defense." GDF No. 91.

### J.    The Four Claims Under the CMS Threshold Amount

The threshold amounts set by CMS for the years at issue in this action are $1,000 for 2014-2016 and $750 for 2017-2021. SUF No. 93. Accordingly, defendants contend that "4 of the 88 claims in this case are under the threshold amount and should be dismissed." SUF No. 94. Plaintiffs respond that "[t]he dollar threshold amount is not a bar to recovery but a mere floor for primary payer reporting purposes." GDF Nos. 93-94.

### K.    The Three Erroneous Claims

Three of plaintiffs' 88 claims do not involve claims for any type of medical coverage, and were erroneously matched by Plaintiffs as part of the data-exchange. SUF No. 95. In response, plaintiffs state that they are withdrawing these three claims. GDF No. 98.

## IV.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

If the moving party meets its initial burden, the opposing party must then set out "specific facts showing a genuine issue for trial" in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## V.  DISCUSSION

42 U.S.C. § 1395y(b)(3)(A) provides "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." Medicare can pay on behalf of a beneficiary if a primary payer "has not made or cannot reasonably be expected to make payment with respect to the item or service promptly[.]" 42 U.S.C. § 1395y(b)(2)(A)(ii). "If an MAO makes such a conditional payment, the Act in turn creates a private right of action allowing the MAO to seek reimbursement from the primary payer who should have made payment in the first place." MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co., 994 F.3d 869, 872 (7th Cir. 2021) (citing 42 U.S.C. § 1395y(b)(3)(A)). "MAOs, like Medicare, can sue primary plans to ensure they are properly reimbursed. But unlike Medicare, MAOs must rely on the private cause of action when they sue." MSPA Claims 1, LLC v. Tenet Fla., Inc., 918 F.3d 1312, 1317 (11th Cir. 2019) (internal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

citations omitted) (emphasis in original).  Three elements must be established to bring a
private cause of action under this statute: "(1) a primary plan, (2) that is responsible to
pay for an item or service [] (3) that failed to make the appropriate payment to Medicare
for the item or service."  Glover v. Philip Morris USA, 380 F.Supp.2d 1279, 1290 (M.D.
Fla. 2005), aff'd sub nom. Glover v. Liggett Grp., Inc., 459 F.3d 1304 (11th Cir. 2006).

### A.    Statute of Limitations

Plaintiffs "continue[] to prosecute 55" of the 88 claims alleged in the FAC.  Opp.
at 18 n. 8; see also Miranda Decl. ¶ 43.  However, all but twenty of these claims are
barred by the three-year statute of limitations set forth in 42 U.S.C. § 1395y(b)(2)(B)(iii),
which is triggered following notice to CMS.[5]  See Dkt. 196; see also Dkt. 265-2.  This is
because, for all but twenty claims, CMS confirmed that it received notice of the claim
more than three years before the claim was added to this lawsuit.  See Dkt. 265-2.

Plaintiffs do not dispute that the three-year statute of limitations applies, or that all
but three claims were reported to CMS more than three years before the claim was added
to this lawsuit.  See Opp. at 30-31.  Rather, plaintiffs argue that the relation back doctrine
preserves the time-barred claims identified by defendants because they are brought "on
the same 'common core of facts' as the claims in MSPs initial complaint."  Id. at 29
(quoting ASARCO, LLC v. Union Pacific R. Co., 765 F.3d 999, 1004 (9th Cir. 2014)).

The Court disagrees.  "An amendment to a pleading relates back to the date of the
original pleading when . . . the amendment asserts a claim or defense that arose out of the
conduct, transaction, or occurrence set out—or attempted to be set out—in the original
pleading."  Fed. R. Civ. P. 15(c).  Here, each of plaintiffs' claims is distinct, featuring a
specific Medicare plan making payments on behalf of a specific individual, as a result of
injuries specific to that individual.  Additionally, each claim features a different insurance
policy, with a particular insurer.  As defendants correctly note, "[t]he only relationship
among the claims is that these two Plaintiffs . . . purport to possess the right to try to
collect" on them.  Reply at 29.  Plaintiffs provide no authority suggesting that application
of the relation back doctrine is appropriate in these circumstances.  Rather, "if a
subsequent complaint alleges new claims that are 'distinct in time and place' and

---

[5] The twenty claims that are not time-barred are the L.L., C.H, C.C., R.C., A.M., A.M,
H.F., G.T., B.M., P.L., J.J., P.U., A.K., F.A., G.P., B.L., S.Y., S.A., P.U., and D.S.
claims.  See Dkts. 263-77, 265-2, 290-16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

excluded from a prior complaint, there is no relation back." <u>United States v. Scan Health
Plan</u>, No. CV 09-5013-JFW (JEMx), 2017 WL 11628884, at *6 (C.D. Cal. Oct. 5, 2017)
(quoting <u>Oja v. United States Army Corps of Eng'rs</u>, 440 F.3d 1122, 1134-35 (9th Cir.
2006).[6]

Accordingly, the statute of limitations bars all but twenty claims brought by
plaintiffs in the settlement case.[7]

**B.     Failure of Proof**

Each of plaintiffs' claims fails because plaintiffs have not put forth any evidence,
let alone admissible evidence, showing that plaintiffs' assignors made payments to
compensate medical providers for treatment for injuries sustained by Medicare
beneficiaries in auto accidents covered by one of the defendants' insurance policies or by
an applicable settlement.  Plaintiffs do not claim that they have copies of the bills that
their assignors received, copies of documents evidencing the payments their assignors
made, or even accounting ledgers that would establish whether their assignors made any
covered payments related to any of plaintiffs' fifty-five claims.  Rather, plaintiffs claim
that "any evidence of bills payments, or accounting ledgers would all be found" in the
spreadsheets they have attached to the Miranda declaration.  GDF No. 4.  However, the
Court finds that the spreadsheets plaintiffs submitted in opposition to defendants' motion
for summary judgment are inadmissible hearsay statements because they allegedly

---

[6] At oral argument and in their supplemental brief, plaintiffs contend that the Court has
already found that the individual claims in this case relate back to the date that plaintiffs
filed their original complaint. <u>See</u> Plfs' Supp. at 6.  However, in the order that plaintiffs
appear to be referencing, which is the Court's order on defendants' motion to dismiss the
third amended complaint, the Court did not address the relation back doctrine.  Instead,
the Court explicitly found that, at the motion to dismiss stage, "[t]here [was] no
indication that any applicable statutes of limitation have run with respect to plaintiffs'
claims." Dkt. 140 at 23.  In any event, "[g]iven the different standards for motions to
dismiss and motions for summary judgment, courts may (and routinely do) reconsider the
same legal arguments at the summary judgment stage." <u>Braden Partners, LP v. Twin
City Fire Ins. Co.</u>, No. 14-cv-01689-JST, 2017 WL 63019, at *6 (N.D. Cal. Jan. 5, 2017).
[7] Additionally, the Court notes that the M.P. and F.C. claims, which plaintiffs contend are
"so compelling that [they] strongly foreshadow[] trial verdicts" for plaintiffs, Opp. at 10,
are time-barred.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | Date | May 25, 2022 |
|----------|------------------------|------|--------------|
| Title    | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | |

summarize out-of-court statements made by third-parties, namely the assignors, offered to prove the truth of the matter asserted, i.e., that payments were made by plaintiffs' assignors for claims that should be reimbursed by defendants.

Plaintiffs argue that "the spreadsheets[] are admissible under Federal Rule of Evidence 803(6), the business records exception to the hearsay rule," and that "[t]he records are separately admissible as adoptive business records under Federal Rule of Evidence 803(6)." Opp. at 14.

With respect to plaintiffs' first argument, the spreadsheets are not plaintiffs' business records, and do not fall within the business records exception to hearsay. The business records exception to hearsay requires that "(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). Plaintiffs acknowledge that "the spreadsheets . . . are a compilation of Raw Assignor data, Third-Party data, and defendant discovery." GDF No. 4. In other words, the spreadsheets were created during this litigation for purposes of this litigation, and are based on information allegedly obtained from third-parties and the defendants during the discovery period. These spreadsheets are not business records under Rule 803(6), as "[b]usiness records prepared solely for purposes of litigation lack trustworthiness." United States v. Miller, 771 F.2d 1219, 1238 (9th Cir. 1985).

Plaintiffs' second argument, that the spreadsheets are admissible as adoptive business records, fails for the same reason. While "records a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records," MRT Const. Inc. v. Hardrives, Inc., 158 F.3d 478, 483 (9th Cir. 1998), the fact remains that plaintiffs' spreadsheets were created by plaintiffs for the purposes of this litigation, and the other elements of Rule 803(6) have not been established. Furthermore, the spreadsheets lack trustworthiness. In MRT Construction. Inc. v. Hardrives, Inc., which plaintiffs rely upon

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

in support of their argument, the Ninth Circuit admitted "attorney bills generated by [a] law firm," as adoptive business records. Id. at 483. If plaintiffs had direct evidence of bills or payments made by plaintiffs' assignors, that evidence might satisfy the business records exception. However, plaintiffs' spreadsheets, created during litigation, do not suffice.

Plaintiffs' spreadsheets are inadmissible hearsay despite plaintiffs' submission of declarations from some of their assignors. The declarations attach "claims data" as "Exhibit A." See Dkt. 290-15. However, each "Exhibit A" does not appear to have been created by the assignors, as each "Exhibit A" is a spreadsheet of tens or hundreds of pages, containing headings such as "msp_client," "msp_mrd_id," and "msp_crd_batch." See id. at 6. Accordingly, it appears that the claims data attached to the assignor declarations as "Exhibit A" was actually created by plaintiffs. The assignor declarations do not establish that the claims data attached to their declarations as "Exhibit A" was "made at or near the time by . . . someone with knowledge" or "was kept in the course of a regularly conducted activity of a business." See Fed. R. Evid. 803(6). Rather, the opposite appears to be the case, as the assignor declarations acknowledge that the claims data "comes directly from the Data Files that [the assignor] transferred to [plaintiffs]." See, e.g., dkt. 290-15 at 3, 157. In other words, the evidence suggests that "Exhibit A" was created by plaintiffs from data transferred to plaintiffs, and therefore each "Exhibit A" is not a business record of plaintiffs' assignors. See Sana v. Hawaiian Cruises, Ltd., 181 F.3d 1041, 1046 (9th Cir. 1999) ("Courts are rightfully wary when parties create self-serving documents and seek to offer them as business records.").[8]

_____

[8] At oral argument and in their supplemental brief, plaintiffs contend that each Exhibit A contains the assignors' raw data, and that therefore plaintiffs' spreadsheets are admissible as business records. See Plfs' Supp. at 2-5. The Court reiterates that plaintiffs' counsel's argument is belied by the assignor declarations, which each state that "claims data is attached as Exhibit A" and that the "claims data *comes directly from* the Data Files that [the assignor] transferred to [plaintiffs]." See, e.g., Dkt. 290-15 at 431-432 (emphasis added). It is also belied by plaintiffs' supplemental brief, which acknowledges that "the evidence attached to the Miranda and assignor declarations is drawn directly from each assignor's business records." Plfs' Supp. at 3. Tellingly, the assignor declarations never state the spreadsheets are their business records. In sum, it appears each Exhibit A was created by plaintiffs. Crucially, none of plaintiffs' assignors attached the actual "Data

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

Additionally, even if the Court were to consider the spreadsheets, they do not suffice to raise a triable issue of material fact with respect to one of the three elements for the private cause of action, i.e., that defendants were responsible for reimbursing plaintiffs' assignors for the payments contained in plaintiffs' spreadsheets. See Glover, 380 F.Supp.2d at 1290. Plaintiffs' spreadsheets do not establish, for example, the identity of the recipient of the payments contained therein, that the payments at issue arose from automobile accidents, or that the payments for which they seek reimbursement were "conditional" payments. See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co., No. 1:17-cv-1537, 2019 WL 6311987, at *7 (C.D. Ill. Nov. 25, 2019), aff'd, 994 F.3d 869 (7th Cir. 2021) (granting summary judgment where "Plaintiff [did] not demonstrate[] from record evidence that any payment . . . was a 'conditional payment' under the" Medicare Secondary Payer provisions on the Medicare Act). Plaintiffs must "prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary payment of the expenses Plaintiffs seek to recover." MSP Recovery, LLC v. Allstate Ins. Co., 835 F.3d 1351, 1361 (11th Cir. 2016).[9]

---

Files" they allegedly sent to plaintiffs. Likewise, plaintiffs did not include the original records from which they allege they created the spreadsheets attached to the Miranda declaration. Given these deficiencies, plaintiffs' citation to United States v. Ganesh, No. 16-CR-00211-LHK, 2018 WL 905941, at *10-11 (N.D. Cal. Feb. 15, 2018), is inapposite. In that case, the court admitted as business records spreadsheets provided by insurers that were pulled directly "from their databases of claims data." Id. at *10. Here, plaintiffs and their assignors have failed to offer the original Data Files, i.e., the records of plaintiffs' assignors. Accordingly, while "printouts prepared specifically for litigation from databases that were compiled in the ordinary course of business are admissible as business records to the same extent as if the printouts were, themselves, prepared in the ordinary course of business," U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co., 576 F.3d 1040, 1044 (9th Cir. 2009) (citations and quotations omitted), the spreadsheets here were not compiled in the ordinary course of business. Rather, they were created by plaintiffs specifically for the purposes of this litigation, and lack trustworthiness. Therefore, plaintiffs' spreadsheets do not meet the criteria of Rule 803(6).

[9] The declaration of plaintiffs' expert, Adam E. Block, assistant professor of health policy & management at New York Medical College School of Health Sciences & Practice, fails to establish that plaintiffs' spreadsheets are business records under Rule 803(6), or that plaintiffs' evidence would be sufficient if the Court were to consider plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

Plaintiffs are unable to make this showing with respect to any of their claims, and have failed to raise a genuine issue to permit recovery.[10]

---

spreadsheets. See Dkt. 288-1 (Declaration of Adam E. Block). While Block discusses the Medicare program and generally concludes that "claims data is the industry standard in determining whether a medical event happened," id. at 15, Block does not discuss plaintiffs' evidence, including the creation, reliability, or sufficiency of plaintiffs' spreadsheets. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1222 (9th Cir. 1995) (Expert's failure to examine the key evidence "substantially impaired his ability to express a reliable expert opinion based upon specific facts." Accordingly, "the expert opinion . . . [was] not of sufficient quantum or quality to create genuine issues of material fact.").

[10] At oral argument, plaintiffs' counsel discussed and presented evidence from the S.Y. claim, arguing that the S.Y. claim exemplifies why summary judgment is inappropriate. See Dkt. 328 (plaintiffs' presentation at May 9, 2022 hearing). The Court disagrees. In addition to plaintiffs' failure to present admissible evidence that SummaCare, Inc., the alleged assignor of the S.Y. claim, made any covered payments for which SummaCare is entitled to reimbursement (see, e.g., id. at 29 (SummaCare explanation of benefits document to S.Y., which shows that the total amount "paid by plan" was $0.00)), the May 12, 2017 assignment from SummaCare "exclude[s] those claims previously identified by other vendors," and the November 3, 2018 assignment from SummaCare "exclude[s] those claims [that] have been identified for pursuit by other subrogation or recovery vendors (including but not limited to Equian) and Pharmacy Benefits Managers (including but not limited to Catalyst RX and Medimpact) and which may have been assigned or relinquished to other vendors for their pursuit." Dkt. 273-34 at 2-3; Dkt. 323-1 at 3. Plaintiffs submit the declaration of Melissa Rusk, Vice President of Operations for SummaCare, in which Rusk states that S.Y claim is not carved out from SummaCare's assignments to plaintiffs, and that plaintiffs "ha[ve] the legal title, right, and interests, to pursue recovery of" S.Y.'s claim. Dkt. 290-15 at 432. However, there is no direct evidence that S.Y.'s claim was assigned to plaintiffs, and is not being pursued by other recovery vendors. In sum, plaintiffs have failed to provide any evidence that S.Y.'s claim was not previously assigned to entities other than plaintiffs, and there is no direct evidence that demonstrates that S.Y.'s claim was included in the May 12, 2017 and November 3, 2018 assignments from SummaCare to plaintiffs. On summary judgment, the nonmoving party must do more than make "conclusory allegations [in] an affidavit."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | Date | May 25, 2022 |
|----------|------------------------|------|--------------|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | |

### C.      Standing

In addition to plaintiffs' failure of proof, summary judgment on each of plaintiffs' claims is required based on plaintiffs' failure to establish standing under Article III or the statutory scheme at issue in this case.  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  Raines v. Byrd, 521 U.S. 811, 818 (1997).  To satisfy constitutional standing requirements, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  An "assignee stands in the shoes of the assignor, and, if the assignment is valid, has standing to assert whatever rights the assignor possessed."  Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc., 770 F.3d 1282, 1291 (9th Cir. 2014).  To satisfy the "traceability" requirement, there must be a "causal connection between the injury and the actions" about which a plaintiff complains.  Easter v. Am. W. Fin., 381 F.3d 948, 961 (9th Cir. 2004).  As a general rule, "standing is determined as of the commencement of the litigation."  Yamada v. Snipes, 786 F.3d 1182, 1204 (9th Cir. 2015).  At the summary judgment stage, a plaintiff must establish "that there is a genuine question of material fact as to the standing elements."  Cent. Delta Water Agency v. United States, 306 F.3d 938, 947 (9th Cir. 2002).

"Under the Medicare Secondary Payer Act, an assignee has standing to sue if (1) its ultimate assignor . . . suffered an injury-in-fact, and (2) [the assignor's] claim arising from that injury was validly assigned."  MSP Recovery Claims, Series LLC v. QBE Holdings, Inc., 965 F.3d 1210, 1217 (11th Cir. 2020).  Here, the Court finds that, at

---

Lujan, 497 U.S. 871, 888 (1990); see also MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co., No. 6:19-CV-00211 (MAD/TWD), 2019 WL 4222654, at *2, *5 (N.D.N.Y. Sept. 5, 2019) (in a case in which the assignment agreement at issue excluded claims that "have been assigned to and/or are being pursued by other recovery vendors," the court found dismissal appropriate where "[t]here [was] no way to identify whether . . . the exemplar claim [had] been assigned" to the plaintiffs).  This failure of proof, coupled with plaintiffs' failure to show that SummaCare made any covered payments for which it is entitled to reimbursement, confirms that plaintiffs have failed to meet their burden to defeat summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02559-CAS-PLAx | | Date | May 25, 2022 |
|----------|------------------------|---|------|-------------|
| Title | MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al | | | |

summary judgment, plaintiffs have failed to establish that their assignors suffered any
injury-in-fact or have standing to sue under the MSP Act. See Lujan, 504 U.S. at 560
(The elements of standing "must be supported at each stage of litigation in the same
manner as any other essential element of the case."). This is because, as discussed,
plaintiffs have failed to adduce admissible evidence that the payments for which they
seek reimbursement were made to compensate medical providers for the reasonable and
necessary treatment of injuries sustained by Medicare beneficiaries in automobile
accidents covered by one of defendants' insurance policies. Accordingly, plaintiffs are
unable to show that defendants are responsible for reimbursing plaintiffs' assignors for
any claims, or that plaintiffs' assignors suffered any injury-in-fact.

Because the Court **GRANTS** summary judgment based on the statute of
limitations, plaintiffs' failure of proof, and plaintiffs' lack of standing, the Court need not
address defendants' other arguments.

## VI.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendants' motion for
summary judgment and **DENIES** plaintiffs' motion for class certification as **MOOT**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |